JAMES M. AORTSON *et al.*, Plaintiffs in Error, *v.* EDWARD H. RIDGWAY and DANIEL G. ANDERSON, Administrators, etc., Defendants in Error.

### ERROR TO FRANKLIN.

In April, 1842, A. recovered a judgment against B. and C., in the circuit court of which B. was Clerk; in September following, D. recovered a judgment against the same parties; D. was induced by B. and C. to bid off certain real estate at a sale by the sheriff without notice, the defendants consenting, for which real estate he afterward increased his bid to satisfy his judgment, and took a deed. A. subsequently had the same real estate sold in a similar manner, and bid it in and took a deed from the sheriff. On a bill filed by D. it was *Held*: That the sale to D. should be set aside, and that he should have execution to recover his debt, B. and C. having concealed the prior lien from him and his attorney, and had thereby induced him to purchase the land in satisfaction of his judgment, which land was subsequently held by others by force of the prior judgment.

BURK, MCKEE & Co. recovered judgment against the defendants, Edward H. Ridgway and Eli D. Anderson, deceased, for $300 or thereabouts, and costs, at the April term, 1842, of the Jefferson Circuit Court.

The plaintiffs, at September term following of said court, recovered a judgment against the same parties for $1,000, or thereabouts, and costs of suit.

Several executions and *venditioni exponas* were issued in favor of the judgment creditors. Levies were made upon the real estate of defendants, and some money was made on plaintiffs' judgment by sale, and other real estate appraised and not sold for want of bidders, under the valuation law which was then in force, and both said judgments remained unsatisfied until the 8th day of May, 1845.

On the 8th day of May, 1845, an execution or *venditioni exponas* was issued in favor of the plaintiffs, and levied upon lot 59, in the town of Mount Vernon, which lot was sold for $150,

and bid off by plaintiffs at sheriff's sale, by the express consent of the defendants, without being advertised previous to the sale, the defendants having expressly waived notice, and the plaintiffs afterward increased their bid $100.

On the 11th day of February, 1846, an execution was issued in favor of plaintiffs, and levied upon lot 61, for which they bid $227.36, at sheriff's sale, on the 21st of March, 1846, which was given up by defendants to be sold, and notice of sale waived as before. The sale of lots 59 and 61 satisfied plaintiffs' debt, and the amount bid for said lots by plaintiffs was as much as they were worth.

On the 17th day of April, 1846, an execution was issued in favor of Burk, McKee & Co., and by consent of Ridgway, levied upon the same lots sold under plaintiffs' execution, and bid off by them; the defendants waived notice of sale as before, and the lots were sold and bid off by Burk, McKee & Co., for their full value.

A deed was made to Burk, McKee & Co. by the sheriff, who obtained full possession of the property, and have since sold it to a *bona fide* purchaser in fee, and the plaintiffs' title has entirely failed, and they have in fact lost the balance of their debt, amounting to $500, and the interest due thereon.

The plaintiffs were non-residents of the state from the time that judgment was rendered up to the time the lots were sold, and did everything in reference to the sale by their agent or attorneys, who were non-residents of the county of Jefferson, and lived at Shawneetown, and seldom attended court.

The defendants lived in Jefferson county, and Ridgway was clerk of the circuit court from the time of the rendition of the judgment in favor of plaintiffs and Burk, McKee & Co., up to and after the sale of said lots, and the defendants had abundance of other real estate during all the time that elapsed from the rendition of the judgment to their being satisfied by said sale, and really gave up said lots to both creditors.

The plaintiffs filed their bill at the May term, 1851, of the Jefferson Circuit Court, setting forth the above facts in substance, and charging that defendants were at least guilty of a constructive fraud upon them, and also prayed relief on the ground of their title failing to said lots, and the gross iniquity of the transaction, and that the satisfaction be set aside, or that a decree be rendered against one or both defendants for the amount actually due them, with interest.

The defendants answered the bill and plaintiffs replied, and the venue was changed to Franklin Circuit Court, where the bill was, on a final hearing of the cause at September term, 1855, of said court, dismissed. PARISH, Judge, presiding.

The cause is brought into this court by writ of error, by

plaintiffs, who seek to reverse the judgment of the circuit court.

R. S. NELSON and W. H. UNDERWOOD, for Plaintiffs in Error.

R. F. WINGATE, for Defendants in Error.

SKINNER, J.   This was a bill in equity to set aside a sale on execution of real estate.

Burk, McKee & Co., at the April term, 1842, of the Jefferson Circuit Court, recovered a judgment against Ridgway and Anderson.   Riggs & Co., whose interest the complainant, James P. Erskine, represents, at the following September term of said court, recovered a judgment against the same parties. Executions were issued upon both judgments, within a year of the respective recoveries.   On the 8th day of May, 1845, execution issued upon the judgment of Riggs & Co., under which lot 59, in block 10, in the town of Mount Vernon, was sold to the plaintiffs in execution, for $150.   On the 11th day of February, 1846, execution issued upon the same judgment, and by arrangement between the parties, the execution creditors increased their bid for lot 59 to $250, and the execution creditors took lot 61, in said block 10, at $227.36, the amount of the balance due on the judgment and execution.   This arrangement was made on the 21st day of March, 1846, the judgment debtors expressly authorizing the sheriff to sell the property under the execution forthwith, and without giving public notice thereof, reserving their right of redemption for fifteen months, and the execution creditors bidding at such sale the balance due on the judgment and execution, which was about the real value of the property.

On the 17th day of April, 1846, an execution issued upon the judgment of Burk, McKee & Co., and the same lots were sold under it to the plaintiffs in execution, by a like arrangement between them and the defendants in execution, and without public notice, who finally obtained a sheriff's deed therefor, and hold the property under the title thus acquired.

Ridgway was clerk of the said circuit court when the several judgments were rendered, and when the sales were made, and Riggs & Co. were non-residents, and their attorney, who lived at a considerable distance from Jefferson county, nor themselves had actual knowledge of the existence of the judgment of Burk, McKee & Co.   It is evident the sale to Riggs & Co. was made by mutual arrangement between the parties, at the supposed or agreed value of the property, and that the sheriff did not make the sale under the provisions of the law, but, in a manner, as the agent of the defendants in execution.

It was by their authority, and not that of the law, that the sale was made without public notice.

The defendants in execution must have known of the prior judgment of Burk, McKee & Co.; and Ridgway, as clerk, and who as such issued the executions, cannot be supposed to have been *in fact* ignorant of the prior lien of that judgment, and that the same, if enforced against this property, would render the title acquired under Riggs & Co.'s judgment worthless. When, therefore, they obtained by arrangement with Riggs & Co., $100 more than they were obliged by their bid and previous purchase to pay for lot 59, and full satisfaction of the judgment by the sale to them of lot 61, made by the sheriff without complying with the requirements of the law, they were bound by good faith, and the plainest rules of fair dealing, to have informed Riggs & Co. of the prior judgment against them; but instead of so doing, they induced them to buy, supposing they were getting the title to the lots, and in ignorance of a material fact within their knowledge, affecting the property, and afterward obtained the application of the same property to the satisfaction of the prior judgment, by a similar sale under that judgment, made without public notice.

So far then, as these complaints are concerned, the sale must be treated as made by Ridgway and Anderson, and not as a judicial sale, for such it was in effect, reserving the right of redemption.

The suppression of fact in a matter material to be known in a transaction pending, is, both at law and in equity, equivalent to the assertion of falsehood. *Lockridge* v. *Foster*, 4 Scam. R. 389.

The complainants have taken nothing by the purchase, and are entitled to the money bid, with interest.

Anderson having died since this transaction, his administrator is made a party defendant with Ridgway, and a decree will be entered in this court in favor of complainant, James P. Erskine, the assignee of Riggs & Co., and against Ridgway for the amount of the sales of lots 59 and 61, with interest, and for costs in this court and the court below, with an award of execution therefor against Ridgway, and in case of non-payment by Ridgway, that the same be paid by the administrator of Anderson, in the due course of administration.

Decree reversed, and decree in this court.

*Decree reversed.*