HANNAH M. COOLIDGE *vs.* SAMUEL N. NEAT.

Suffolk.    March 12. — July 1, 1880.    ENDICOTT & SOULE, JJ., absent.

It is no defence to an action for breach of a contract to marry, that the defendant broke the contract because he felt that the proposed marriage would not tend to the happiness of both parties.

In an action by a woman for breach of a promise of marriage, the judge instructed the jury that, in estimating the damages, they might take into consideration the money value or worldly advantage of a marriage which would have given her a permanent home and an advantageous establishment, the wound and injury to her affections, whatever mortification or distress of mind she suffered resulting from the defendant's refusal to perform his promise, and, in this connection, the length of time during which the engagement had subsisted. *Held*, that the defendant had no ground of exception.

CONTRACT for breach of a promise of marriage. Trial in the Superior Court, before *Putnam*, J., who allowed a bill of exceptions in substance as follows :

The plaintiff put in evidence tending to prove that, in May 1875, she and the defendant mutually promised to marry each other ; that she went to the expense of preparing certain articles of underclothing, in preparation for their marriage ; and that the defendant's attentions continued up to September 2, 1878, when he suddenly ceased his visits to her, became engaged to another woman about the last of September or first of October, to whom he was married in February 1879.

The defendant admitted the engagement and the breach of it on his part, and his marriage to another woman ; that the plaintiff had always treated him kindly and affectionately ; and that their relations were all proper, and he had no fault to find with her conduct.    He also testified that, long before he left her, he made up his mind that he could not be happy with her ; that he ceased to regard her with affection, and finally left her, thinking that it would be for the happiness of both of them that they

should separate; that he had on one or two occasions told her of this, and that she must expect him to leave her at some time; but that she would not listen to it, and never assented that he might do so.

The plaintiff contradicted this, denying that he ever so informed her; and testified that his relations continued intimate with her up to the evening of the day when he ceased to visit her; and that they parted on that evening in the same affectionate manner as before, with no intimation from him or expectation on her part that the acquaintance was to be broken off; and that, after he left her, her health was seriously impaired, so that she was unable to attend to her daily occupation for some weeks.

The defendant asked the judge to rule as follows: " 1. An agreement to marry is not a marriage contract, but an agreement to make thereafter that contract. 2. The engagement or promise to marry is always on the implied understanding and condition that if, at any time before marriage, either party finds that consummation of the promise will tend to the unhappiness of both, then such party has the power to abrogate the agreement or promise. 3. If an engagement to marry is entered into upon the assumption that such marriage will tend to the happiness of both parties, and it afterward appears that such marriage will not have that tendency, but a contrary one, then it is not the contract contemplated, and neither party is bound by it. 4. Public policy will not permit the enforcement of an engagement to marry founded on a mistake of facts, when it appears that such enforcement must end only in proceedings for divorce. 5. When one who has entered into an engagement to marry finds that he cannot, in good faith, take upon himself the marriage vow and covenant, it is his duty to make it known, and decline to enter into that covenant, and no damage can be recovered against him for so declining. 6. If the jury believe the testimony of the defendant, that he ceased to care for, or regard with affection, the plaintiff, and believe therefore that, from the absence of such regard, the union of the parties for life, by marriage, would not have resulted in the happiness or advantage of the plaintiff, but only in unhappiness, she will be entitled to no damages from the defendant for his failure to

perform an agreement to marry. 7. This is an action for dam-
ages for not marrying, and if it was not his duty to marry, no
damage can be recovered against the defendant for not marry-
ing. 8. That if it is clear that it was his duty to break off the
engagement, then no damage can be recovered against him for
the performance of that duty."

The judge gave the first instruction requested, and also the
second and third, with this addition to each: "Subject only
to indemnifying the other party for such loss or injury as he
or she may have sustained by reason of such abrogation." In
place of the fourth request, the judge gave this ruling: "The
law will not enforce such a contract, or compel the party to
marry under such circumstances." The judge gave the fifth
request, except the words, "and no damage can be recovered
against him for so declining."

The judge also further instructed the jury as follows: "An
engagement of marriage, between two persons of suitable age to
contract, is founded on a meritorious consideration, and can be
enforced to this extent, that if the contract is broken by either
party without the fault or consent of the other, that other may
secure such damages as he or she can show to be the conse-
quences of such breach. There is no power to enforce the per-
formance of the contract, or to compel one party to marry the
other. If one of the parties feels that it is more for his or her
happiness to break the contract and marry another person, he or
she is at liberty to do so; but if, by so doing, he or she occa-
sions damage, loss or injury to the other party, recompense must
be made to that other party to the extent of the loss and in-
jury thus occasioned. It might be possibly a wise thing for the
party, under such circumstances, to break it, and possibly his
duty, morally, to do so, but he has broken his contract, and must
respond in damages. Such a contract may be broken in such a
way that no damages can be recovered. The parties may mutu-
ally release each other. If it is broken on account of fraud or
deception practised by one upon the other, damages cannot be
recovered by the party who has practised such fraud or decep-
tion; one party cannot break it without the fault and consent
of the other, merely because he feels that he cannot make the
other party happy, or that the other party will be unhappy;

and this only affects the question as to the extent of the loss or injury which the other has sustained."

Upon the question of damages, the judge instructed the jury that they were to be computed on the principle of indemnity and reasonable compensation; that, as elements of damage, the jury would have the right to consider : 1. The disappointment of the plaintiff's reasonable expectations, and to inquire what she had lost by reason of such disappointment, and, for that purpose, to consider, among other things, what would be the money value, or worldly advantage, of a marriage which would have given her a permanent home and an advantageous establishment. 2. The wound and injury to her affections. 3. Whatever mortification or distress of mind she suffered, resulting from the refusal of the defendant to fulfil his promise. That, in connection with the question how far she had been wounded in her affections or suffered mortification or distress, the jury might consider the length of time during which the engagement had subsisted; that if a female had been wantonly deserted, after an engagement of this kind, public policy as well as justice dictated the propriety of a legal indemnity, and if her affections had been deeply implanted, her wounded spirit, the disgrace, the insult to her feelings, the probable solitude which might result by reason of such desertion, after a long courtship, were all matters for their consideration.

At the defendant's request the judge also gave the following instruction : " It cannot be assumed that the defendant, by associating with the plaintiff, prevented her from forming any other marriage alliance or engagement to marry. The plaintiff might have had no other opportunity for marriage, and the defendant cannot be held responsible for merely possible damage."

The jury returned a verdict for the plaintiff in the sum of $3000; and the defendant alleged exceptions.

*S. J. Thomas*, for the defendant.

*H. G. Allen*, for the plaintiff, was not called upon.

Ames, J. The instructions given to the jury were carefully guarded, and appear to have been in exact conformity with the well-established rule in cases of this kind. The rulings requested by the defendant assume that he would have the right, without the consent of the other party to the contract, to break

off the engagement, without the liability to make any compen-
sation or indemnity, if he should come to the conclusion that
the proposed marriage would not tend to the happiness of both
parties. This proposition is equivalent to saying that the de-
fendant has the right to recede from the contract, if he should
be disinclined to fulfil it. The instructions requested were
therefore properly refused, in the form in which they were
presented; and, so far as they were given, they were suitably
qualified.

The rule of damages, as given by the judge, was in conform-
ity to repeated decisions of this court in similar cases. *Boynton*
v. *Kellogg*, 3 Mass. 189. *Wightman* v. *Coates*, 15 Mass. 1. *Har-
rison* v. *Swift*, 13 Allen, 144. *Grant* v. *Willey*, 101 Mass. 356.
At the request of the defendant, the jury were cautioned not
to assume that the plaintiff's association with the defendant had
prevented her from forming any other marriage alliance or en-
gagement. *Exceptions overruled.*