## FREDERICK A. POTTS *vs.* FRANK L. CHAPIN.

Worcester.   Oct. 5, 1881. — Sept. 7, 1882.   LORD, W. ALLEN & C. ALLEN,
JJ., absent.

A declaration alleged that the defendant was the cashier of a bank at which E.
did business; that at a certain date, and for a long time before, E. was indebted
to various persons in large sums of money, and was insolvent; that the bank
had for a long time and continuously discounted commercial paper for E.; that
E. had not, for a long time prior to said date, "been able to meet his current
obligations when due by payment, and had procured extensions by new dis-
counts of his paper from time to time;" that E. during the same time was
buying goods and selling them for less than their value, making drafts for their
price, and procuring them to be discounted by the bank, through the hands
of the defendant; that the defendant knew " the above-recited unusual, risky
and deceptive manner in which E. was transacting his business, that he was of
doubtful standing and responsibility, and was likely to fail, and was insolvent;"
that, a short time before said date, E., who had never traded with the plaintiff
before, applied to him for a sale of goods, and referred him, as to his standing
and credit, to said bank; that at said date the plaintiff wrote to the defendant,
as cashier of said bank, " as to the responsibility and financial standing of E.;"
that the defendant replied by letter as follows: " Not familiar with detail of his
business; he has paid all paper with his name upon maturity without protest
promptly since my acquaintance with him," for a period of fifteen years; that
the defendant, in making such representation, " did not deal fairly with the
plaintiff and give him honestly such information as he had relative to the sub-
ject matter of the inquiry, but intended to and did deceive the plaintiff;" and
that the plaintiff, relying on and deceived by the representations made by the
defendant, sold and delivered goods to E., who at that time was insolvent and
who failed in business, stopped payment, took the benefit of the insolvent law,
and refused and neglected to pay the plaintiff for said goods. *Held*, on de-
murrer, that the declaration did not state a legal cause of action.

TORT.   The declaration as amended was as follows: " The
plaintiff says Stephen K. and Frank Edwards were copartners,
residing and doing business as traders and commission mer-
chants in Southbridge under the firm name of Wm. Edwards's
Sons; that the defendant was and is cashier of the Southbridge
National Bank in said Southbridge, and said Edwards's Sons did
their banking business through and at the said bank; that said
Edwards's Sons in August 1880, and for a long time before,
were heavily indebted to divers persons in large sums of money,
and were insolvent; that the said bank, from time to time and
continuously, discounted commercial paper, notes, drafts, &c.,
for the said Edwards's Sons, on a large amount of which paper

were borne the names of William Edwards of said Southbridge and Jacob Edwards of Boston, the father and uncle respectively of said Edwards's Sons, as indorsers, sureties, or in some other relationship to the paper making them liable thereon; that the said Edwards's Sons had not, for a long time prior to the said August, been able to meet their current obligations when due by payment, and had procured extensions by new discounts of their paper from time to time with the aforesaid and other indorsers or sureties, and had met maturing obligations by using money procured on new loans for the purpose of increasing their deposits, all or a large portion of which transactions were at the said bank, and passed through the hands of, and were fully and intimately known to, the defendant, the cashier of said bank; that before, during and about the time of the transactions hereinafter set forth, the said Edwards's Sons were more than ever troubled to meet their maturing obligations at said bank, which the defendant well knew, and that during the same time said Edwards's Sons were buying goods in the market in quantities larger than usual and were disposing of them at prices below their market value, making drafts for the price of such sales and procuring them to be discounted by said bank through the hands of the defendant in irregular and unbusinesslike ways and on insufficient and unusual security, were putting goods bought by them in consideration of advances on them into the hands of third persons, to hold in trust as security for the advances, and were, by deposits of money thus obtained in said bank, managing to pay off the accruing liabilities on which their said father and uncle were holden; that the defendant received merchandise to hold as security for advances, and well knew and had reasonable cause to know the above-recited unusual, risky and deceptive manner in which said Edwards's Sons were transacting their business, that they were of doubtful standing and responsibility, and were likely to fail, and were insolvent.

" And the plaintiff further says, that, in June and July 1880, the said Edwards's Sons applied to the plaintiff, who is a wholesale coal merchant in New York City, for a sale of a large amount of coal; that said Edwards's Sons had never before traded with the plaintiff and were strangers to him, and referred

him for reference as to their standing and credit to the said bank; that the plaintiff applied in writing to the said bank, addressing the cashier thereof, for information as to the responsibility and financial standing of said Edwards's Sons, by letter as follows: 'New York, Aug't 3d, 1880. Cashier Southbridge Nat'l B'k, Southbridge, Mass.: Dear Sir, — The Messrs. Wm. Edwards's Sons of your town have referred me to your bank for information as to standing and responsibility. I shall esteem it a favor to receive from you anything bearing on same that you can give. With respect, yours, &c. Fredk. A. Potts, G. M. W.' And said defendant represented in writing to the plaintiff by letter on the 5th day of August, 1880, on the bottom of the above set forth letter from the plaintiff, regarding the standing and responsibility of said Edwards's Sons, in words and figures as follows: 'Not familiar with detail of their business; they have paid all paper with their name upon maturity without protest promptly since my acquaintance with them from 1865 to 1880. Yours Respty, F. L. Chapin, Ca., 8—5, 1880.' Intending thereby to give and giving the plaintiff to understand that they, the said Edwards's Sons, had met their paper at maturity by payments in money, or with funds on hand the proper property of said Edwards's Sons, or money or funds owned and obtained by them in the usual and ordinary course in which solvent men conduct their business, and not by the unusual and irregular methods of doing business set forth above, nor by renewals; and were so far as said defendant knew in good financial condition, standing and responsibility, whereas said defendant knew the said Edwards's Sons were heavily indebted as aforesaid, did not meet their paper at maturity by payments of money, or with funds on hand the proper property of said Edwards's Sons, or money or funds owned and obtained by them in the usual and ordinary course in which solvent men conduct their business, and not by the unusual and irregular methods of doing business set forth above, nor by renewals; and were practising the irregular and unusual methods of doing business set forth above. And plaintiff says the defendant in making such representation to the plaintiff did not deal fairly with the plaintiff, and give him honestly such information as he had relative to the subject matter of the inquiry, but intended to and

did deceive the plaintiff and mislead him into confidence in the said Edwards's Sons, and gave said Edwards's Sons a false and fictitious credit which he well knew they were not entitled to. And the plaintiff says that, relying on and deceived by the said representations of the defendant, he sold and delivered to the said Wm. Edwards's Sons a large quantity of coal of the value in all of three thousand four hundred thirty-seven $\frac{22}{100}$ dollars, except a small part thereof stopped in transitu ; that, at the time of such sale and delivery, said Edwards's Sons were insolvent, did not expect or intend to pay for said coal, were utterly unable to pay for the same, and, before the delivery was completed as to so much thereof as was stopped in transitu by the plaintiff, they failed, stopped payment, took the benefit of the insolvent law of Massachusetts, and refuse and neglect to pay the plaintiff for said coal. Whereupon the plaintiff says he has a cause of action against the defendant for damages resulting to the plaintiff from the false and deceitful representations aforesaid made by the defendant to the plaintiff."

The defendant demurred to the declaration, on the ground, among others, that it did not state a legal cause of action. The Superior Court sustained the demurrer, and ordered judgment for the defendant ; and the plaintiff appealed to this court.

*W. S. B. Hopkins*, for the plaintiff.

*G. F. Hoar & A. J. Bartholomew*, for the defendant.

FIELD, J. Taking the somewhat ambiguous language of the declaration most strongly against the pleader, and in the sense in which both parties in their briefs, and at the argument, agreed it was to be understood, namely, that the clause in the declaration, that " Edwards's Sons had not, for a long time prior to the said August, been able to meet their current obligations when due by payment, and had procured extensions by new discounts," &c., was to be construed to mean, not " that their paper had been dishonored, but only that they had resorted to the methods afterwards set forth to meet it," it is plain that there is no allegation that the statement contained in the letter of the defendant, that " Edwards's Sons have paid all paper with their name upon maturity without protest promptly," &c., was false. There is no allegation that this statement, though literally true, was false in the sense in which the plaintiff understood it, and

as reasonable men had a right to understand it. The other allegations are in substance that the defendant knew that Edwards's Sons were insolvent, and that they were "meeting their current obligations in irregular and unbusinesslike ways, and were transacting their business in an unusual, risky and deceptive manner," the particulars of which are set out in the declaration; and that the defendant in making the representations to the plaintiff contained in the letter "did not deal fairly with the plaintiff and give him honestly such information as he had relative to the subject matter of the inquiry, but intended to and did deceive the plaintiff," &c. This is a statement that the defendant concealed material facts which he knew, for the purpose of deceiving the plaintiff, so that he would give credit to Edwards's Sons which the defendant believed he would not give if these facts were made known. It is undoubtedly true that the fraudulent concealment of known facts with the intent to mislead, and which does in fact mislead another to his damage, does not constitute actionable fraud, unless there be some obligation which the law recognizes to disclose the facts concealed.

No relation existed between these parties which imposed any obligation in this respect upon the defendant. He was not bound to answer the plaintiff's letter, but if he answered it at all, he was bound to tell the truth. If he expressed an opinion upon the solvency of Edwards's Sons, it must be his real opinion; if he stated a specific fact, he must state it as he believed it to be; and if he stated a fact positively as of his own knowledge, he must know the fact to be as stated.

The inquiry of the plaintiff was as to the "standing and responsibility" of Edwards's Sons. The defendant in reply stated one fact, which, it is contended, had some tendency to show that Edwards's Sons were of "good standing and responsibility." If the defendant purposely concealed any fact, the existence of which rendered the representation he made untrue, then it is strictly a case of false representations, even although the decision is put upon the ground of a fraudulent concealment of a material fact; but the concealment in the case at bar is of independent facts, which do not contradict the representation made, but from which, it is contended, an inference in regard to

pecuniary standing and responsibility might be drawn different from that naturally to be drawn from the fact represented.

The plaintiff relies upon *Tryon* v. *Whitmarsh,* 1 Met. 1. There the representation was that one Whitney was entitled to credit, and the decision was that the jury should have been instructed "that notwithstanding they should find all the said propositions in favor of the plaintiffs, still the defendant would not be liable, if they were of opinion, from the evidence, that he gave an honest opinion, and truly believed that the persons recommended were trustworthy;" and, although it is said in the opinion "that the question for the jury was, whether the defendant knew that the assertion or opinion contained in his letter was false, or that he did not fully believe it to be true; or whether he did not conceal a material fact from the knowledge of the plaintiffs, with the intent to deceive them;" yet the case did not call for any determination of the question whether the mere concealment of material facts with the intention to deceive would support an action for deceit.

*Kidney* v. *Stoddard,* 7 Met. 252, is a stronger case for the plaintiff. The representation was "that A. D. S. Jr.'s contracts, of whatever nature, will unquestionably be punctually attended to," and the concealment was of the fact that A. D. S. Jr., who was the son of the defendant, was a minor. The decision is put distinctly upon the ground of an intentional concealment of a material fact important to be known, with the design to obtain credit for his son, which he knew could not be obtained if the fact of his infancy were known; and *Tryon* v. *Whitmarsh, ubi supra,* and *Lobdell* v. *Baker,* 1 Met. 193, are cited.

But *Lobdell* v. *Baker* was decided upon the ground, that if one puts into circulation a promissory note indorsed by a minor, "with nothing to rebut the natural inference to be drawn from it, he by necessary implication affirms that the indorser is a person capable of indorsing, and binding himself by such indorsement;" and that this implied representation, being false to the knowledge of the defendant, was a fraud in law, if not in fact, and would support an action of tort for false representations. *S. C.* 3 Met. 469. Apart from the form of the action, the foundation of the obligation of the defendant was the warranty, implied in the sale of negotiable paper, that the names upon it are genuine

and of persons competent to contract. *Merriam* v. *Wolcott,* 3 Allen, 258, 260.

In *Kidney* v. *Stoddard, ubi supra,* it appears to have been assumed that the representation made by the defendant was a representation that the son of the defendant was a person worthy of credit; and the decision can be reconciled with the rule of law, as generally stated, by holding that the concealment of the fact of the infancy of the son was the concealment of a fact which rendered the representation made false, because an infant may avoid his contract, and is therefore not a person worthy of credit. Indeed, it is reasonable to hold that, if one person recommends another as entitled to credit, he impliedly represents that he is a person who can bind himself by a contract.

In *Peek* v. *Gurney,* L. R. 6 H. L. 377, 403, Lord Cairns states the rule of law as follows : " Mere non-disclosure of material facts, however morally censurable, however that non-disclosure might be a ground in a proper proceeding at a proper time for setting aside an allotment or a purchase of shares, would in my opinion form no ground for an action in the nature of an action for misrepresentation. There must, in my opinion, be some active misstatement of fact, or, at all events, such a partial and fragmentary statement of fact, as that the withholding of that which is not stated makes that which is stated absolutely false." And Lord Chelmsford, on p. 391, says, " Assuming that mere concealment will not be sufficient to give a right of action to a person who, if the real facts had been known to him, would never have entered into a contract, but that there must be something actively done to deceive him and draw him in to deal with the person withholding the truth from him, it appears to me that this additional element exists in the present case." " I cannot doubt that there was, beyond the passive concealment of the state of affairs of the old firm, an active misrepresentation of the truth by the respondents."

Baron Bramwell, dissenting in *Lee* v. *Jones,* 17 C. B. (N. S.) 482, 508, says : " To constitute fraud, there must be, — first, the assertion of something false ; which is not the case here, — or, secondly, the suppression of something true, where there is a duty or profession of stating everything material; and here there is

no such duty, — or, thirdly, what perhaps is included in one of the foregoing, a suggestion of falsity, by statement of some facts, and suppression of others which would qualify those stated." Mr. Justice Crompton, concurring with the majority, in the same case, p. 510, says : " To constitute a fraudulent misrepresentation, it need not be made in terms expressly stating the existing of some untrue fact : but, if it be made by one party in such terms as would naturally lead the other party to suppose the existence of such state of facts, and if such statement be so made designedly and fraudulently, it is as much a fraudulent misrepresentation as if the statement of the untrue facts were made in express terms." These statements of the law differ in the nearness or remoteness of the connection required between the facts stated and the facts concealed in order to constitute a suggestion of what is false or a misleading representation.

The decision of the case at bar must depend upon the question whether the declaration describes such " a suggestion of falsity " in the representations made as to constitute a fraudulent misrepresentation. The defendant disclaimed all knowledge of the details of the business of Edwards's Sons, and expressed no opinion generally upon their " standing and responsibility." He did not undertake to make any representation upon the manner in which they obtained funds for the payment of their notes, or the terms upon which they obtained discounts, or the amount of their obligations. He did not profess or undertake to state all the facts material to be considered in determining their solvency. He did not request or invite the plaintiff to sell merchandise to them on credit. He stated a single fact which was true. The significance of this fact standing alone it is impossible judicially to declare ; but it must be known to all merchants that the length of time which a person will continue to pay his notes at maturity cannot be determined by the length of time he has already so paid them. If it is said that the representation made suggested something that is false, it is impossible with any reasonable definiteness to state the facts which it suggested. The answer of the defendant implied that he was unwilling to take the responsibility of saying that Edwards's Sons were of good standing, but it implied nothing in regard to their methods of doing business except what it

expressly stated, namely, that they had paid their notes at maturity. We think it would be an unwarrantable extension of the law relating to fraudulent misrepresentations to hold the defendant liable on the facts stated in this declaration.

*Judgment affirmed.*