.ANNA D. VAN HOUTEN *vs.* ASA P. MORSE.

Suffolk. January 19, 1894. — November 30, 1894.

Present: FIELD, C. J., ALLEN, MORTON, & BARKER, JJ.

*Breach of Promise of Marriage — Fraudulent Concealment — Instructions — Evidence.*

It is not the duty of a person, before making or accepting an offer of marriage, to communicate all the previous circumstances of his or her life ; and the parties to the contract will be bound, if they become engaged to marry without making any investigation, and without receiving any assurances or representations which lead to the engagement, even though matters relating to either party are discovered subsequently which, if known at the time, would have prevented the engagement, unless they are such as give a right to the other party to terminate the contract upon their discovery.

If a man and a woman enter into an engagement to marry, the facts that she had some negro blood in her veins, or that her motives were mercenary, or that there was a want of affection on her part, or an incompatibility, resulting from disparity of age, difference in character and disposition, and other causes, will not justify him, as matter of law, in breaking the contract.

If a woman, who contemplates entering into an engagement to marry, undertakes, without inquiry from the man, to state facts relating to any circumstances in her history or life, or to her parentage or family, or to her former or present position, which are material, she is bound not only to state truly the facts which she narrates, but also not to suppress or conceal any facts which are necessary to a correct understanding on his part of the facts which she states ; and, if she

wilfully conceals and suppresses such facts, and thereby leads him to believe that the matters to which such statements relate are different from what they actually are, she will be guilty of a fraudulent concealment, which will avoid a contract to marry subsequently made.

At the trial of an action for breach of a promise of marriage, the defendant requested the judge to rule as follows: "If mutual promises to marry were made, and the defendant was influenced to do so by the fraud or deception of the plaintiff as to her life, lineage, character, traits of character, or property, or former condition in life, his promise does not bind him." The judge said: "That I should give with the qualification which I have made generally upon the subject. I think there is nothing objectionable in that." He had previously told the jury that it was not the duty of a party, before making or accepting an offer of marriage, to communicate all the previous circumstances of his or her life; and that a party would not have the right to terminate a contract to marry on the ground of fraud upon subsequently discovering matters which, if seasonably known, might have prevented the engagement, though not sufficient to justify a party in breaking it off. *Held*, that, as thus qualified, the instruction was correct, and the defendant had no ground of exception.

In an action for breach of a promise of marriage, there was evidence tending to show that the plaintiff had negro blood in her veins; and that, in making statements to the defendant regarding her parentage, she suppressed that fact. The plaintiff was allowed to introduce in evidence photographs of her parents and sister, and of the latter's children, which she testified were correct likenesses, and had been shown by her to the defendant. *Held*, that no error appeared.

CONTRACT, for breach of promise of marriage. At the trial in this court, before *Barker*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

*L. W. Howes*, (*E. Sullivan* with him,) for the defendant.

*R. M. Morse & L. M. Child*, for the plaintiff.

MORTON, J. The defence principally relied on in this case is that the promise which the jury have found was made was induced by fraudulent conduct and representations and concealments on the part of the plaintiff with reference to various matters relating to her past life, to her parentage and family, and to her position and circumstances. The defendant contends that the instructions of the court as to what constituted fraudulent concealment were not sufficient, and that certain requests which he made should have been given.

The jury were correctly instructed that it was not the duty of a party, before making or accepting an offer of marriage, to communicate all the previous circumstances of his or her life; and that the parties would be bound, if they became engaged without making any investigations, and without receiving any assur-

ances or representations which led to the engagement, even though matters were discovered subsequently which, if known at the time, would have prevented the engagement, unless they were such as gave a right to the other party to terminate the contract upon their discovery. Whether the only matters which would give the defendant such a right were those relating to the chastity of the plaintiff, we have no need now to consider. No question was made by him as to the plaintiff's chastity; and the fact, if it was a fact, that the plaintiff had some negro blood in her veins, or that her motives were mercenary, or that there was a want of affection on her part, or that there was an incompatibility resulting from disparity of age, difference in character and disposition, and other causes, which, apart from fraud, were the things relied on by the defendant, would not justify him as matter of law in breaking the contract. *Reynolds* v. *Reynolds*, 3 Allen, 605. *Coolidge* v. *Neat*, 129 Mass. 146. *Gring* v. *Lerch*, 112 Penn. St. 244. *Berry* v. *Bakeman*, 44 Maine, 164. *Leeds* v. *Cook*, 4 Esp. 256. *Baker* v. *Cartwright*, 10 C. B. (N. S.) 124. *Beachey* v. *Brown*, El., Bl. & El. 796. *Young* v. *Murphy*, 3 Bing. N. C. 54. *Bench* v. *Merrick*, 1 C. & K. 463. See also 2 Am. & Eng. Encyc. of Law, 525, 526, for collection of cases. But in respect to what would, in view of the circumstances of this case, be such concealment on the part of the plaintiff as to constitute fraud, we think that the instructions hardly went far enough, or at least that it is possible that the jury may not have understood them as they were perhaps intended by the court to be understood. The jury were instructed that if the engagement was brought about, in whole or in part, by false representations, by concealments upon matters which were inquired about, or which the party had by universal consent the right to know, then the contract could not be enforced. And later they were told that the defendant was not bound if the contract was procured by deception or by fraud, or by concealment which was fraud, but that there was no fraudulent concealment by simply not communicating information; that a promise would be valid, though made in complete ignorance of the antecedents of the parties, but that there was a different doctrine where matters were inquired about; and that, if either party made inquiries of the other

with reference to family, position, or circumstances in the life or experience of the other, then, if wilful false statements were made with reference to any of those things which might fairly be considered as entering into the judgment of either party as to whether that party would or would not enter into a contract of marriage, then there would be a false representation. " That is," the court continued, " a statement which the party knows is false, or makes as true of his or her own knowledge, when it is in fact untrue, and without knowing that it is true, or if there is concealment of any such particular which is inquired about, those circumstances will be sufficient to make void a contract entered into in consequence and relying upon them, unless they are of such a nature that no man would be justified in the exercise of any reasonable care in relying upon these statements." These instructions might, and probably would, lead the jury to infer that concealment on the part of the plaintiff would not constitute fraud, except as to matters that were inquired about by the defendant.

But we think that if the plaintiff undertook, without inquiry from the defendant, to state facts relating to any circumstances in her history or life, or to her parentage or family, or to her former or present position, which were material, she was bound not only to state truly the facts which she narrated, but she was also bound not to suppress or conceal any facts which were necessary to a correct understanding on the part of the defendant of the facts which she stated; and if she wilfully concealed and suppressed such facts, and thereby led the defendant to believe that the matters to which such statements related were different from what they actually were, she would be guilty of a fraudulent concealment. *Kidney* v. *Stoddard*, 7 Met. 252. *Short* v. *Currier*, 153 Mass. 182. *Burns* v. *Dockray*, 156 Mass. 135, 137. *Prentiss* v. *Russ*, 16 Maine, 30. *Atwood* v. *Chapman*, 68 Maine, 38, 40, 41. *Potts* v. *Chapin*, 133 Mass. 276. *Clark* v. *Baird*, 5 Seld. 183. *Brown* v. *Montgomery*, 20 N. Y. 287. *Devoe* v. *Brandt*, 53 N. Y. 462. *Hill* v. *Gray*, 1 Stark. 434. *Stevens* v. *Adamson*, 2 Stark. 422. *Arkwright* v. *Newbold*, 17 Ch. D. 301, 317, 318. *Aortson* v. *Ridgway*, 18 Ill. 23. Add. Torts, (Wood's ed.) 1205.

Mere silence on the part of the plaintiff, without inquiry by

the defendant, though resulting in the concealment of matters which would have prevented the engagement if known, would not constitute fraud on her part. *Potts* v. *Chapin, ubi supra.* But a partial and fragmentary disclosure, accompanied by the wilful concealment of material and qualifying facts, would be as much of a fraud as actual misrepresentation, and in effect would be misrepresentation. *Arkwright* v. *Newbold, ubi supra.*

There was evidence that the plaintiff represented to the defendant before the engagement that she had been previously married, and had lived with her husband in Spokane and other places five or six years, and that a few weeks before she left Spokane for Boston she had obtained a divorce from him on account of his bad conduct and cruelty to her. So far as appears from the exceptions, that was all that the plaintiff told the defendant about the divorce before the engagement. But there was testimony tending to show that, at the same time that she procured a divorce from her husband, he procured one from her; and that the cross-bill filed by him in answer to her complaint, and on which his divorce was granted, charged her with being a woman of violent and ungovernable temper, and of jealous, revengeful, and vicious disposition, and with having, within two weeks after their marriage, commenced a systematic course of violent, abusive, and cruel conduct towards him, which finally broke down his health, and compelled him to leave her. It also charged her with assaulting him with a carving-knife, and with using profane epithets in regard to himself, his relatives and friends, and alleged numerous specific acts of violence and passion.

We think that the divorce which her husband obtained from the plaintiff and the charges contained in the cross-bill were material facts, and that if the plaintiff knew them when she told the defendant that she had obtained a divorce from her husband for his cruelty, and wilfully suppressed them, she was guilty of a fraudulent concealment and misrepresentation. To say that she had obtained a divorce from her husband for his cruelty, and omit all reference to his divorce and the grounds on which he obtained it, was to state the matter in such a way as to convey a different impression from that which would have been conveyed if all the facts had

been stated, and was misleading. Though it does not appear very clearly from the exceptions whether she did or did not know of the divorce which her husband had obtained from her, and of the charges which he made in his cross bill, it is fairly to be inferred that she was not ignorant either of the divorce or of the charges. There was testimony tending to show that, when the defendant informed her of them, she did not express ignorance of them, but said that they were not true, and the trial seems to have proceeded on the assumption that she knew of them. Moreover, though possible, it is hardly probable that she was unacquainted with the fact that he had obtained a divorce, or with the grounds on which he got it.

So with regard to her parentage and family. She was under no obligation to tell the defendant about them in the absence of inquiry by him. But if she voluntarily undertook to make any statements concerning them, she was bound not only to state truly what she told, but also not to suppress or conceal facts which would materially qualify those which she stated. If, for instance, as the evidence tended to show, she told the defendant that her father and mother were both of the best white families in Charleston, South Carolina; that her father was a distinguished lawyer; that her mother was equally high bred; and that after his death her mother married a man by the name of Smith, with which marriage her mother's folks were dissatisfied, and that on that account the family moved to California; — but if she suppressed the facts that Smith was a colored barber and an octoroon and her reputed father, and that her mother had negro blood in her veins, and was about one eighth negro, the impression as to the standing of herself and family, and the credibility of her statement respecting her parentage, would or might be quite different from that which would be likely to be the case if she had told the whole truth. These facts, if they were facts, were necessary to a correct understanding of the real state of the circumstances of her family and of her previous history, and were or might be found to be material; and a wilful suppression of them on her part, in view of what there was evidence that she told, would constitute, or might be found to constitute, a fraud upon the defendant. *Wharton* v. *Lewis*, 1 C. & P. 529.

The defendant's requests did not state the law with entire correctness, and did not direct the attention of the court particularly to the effect of a suppression by the plaintiff of facts which would materially modify those which she voluntarily told the defendant respecting the divorce and her parentage and family.* They did, however, call for instructions as to what would constitute fraudulent concealment in respect to those matters, and it is evident from the charge that the court understood them to do so. In giving its instructions, the court stated the law in reference to things that were inquired about in such a manner that the jury might infer that as to matters not inquired about the suppression of material facts would not constitute fraudulent concealment. As to an important phase of the case this was erroneous, and the jury may have been misled by it; and though the defendant did not call the atten-

---

* The requests for rulings set out in the bill of exceptions were as follows :

"1. The increased happiness of both parties is, or should be, the only object of marriage; hence mutual promises, based upon genuine mutual affection of the parties, constitute a valid contract to marry.

"2. If the requisite affection was wanting when the promise was made or accepted by one party, such promise was a fraud and deception, and would not bind the other party. In such case there is no good consideration.

"3. If, after a valid contract to marry has been made, the mutual affection necessary to sustain the mutual promises ceases, the consideration fails, and the promises are no longer binding.

"4. If mutual promises to marry were made, and the defendant was influenced to do so by the fraud or deception of the plaintiff as to her life, lineage, character, traits of character, or property, or former condition in life, his promise does not bind him. . . .

"6. If the jury are satisfied that there were mutual promises of marriage between the parties, and that the plaintiff's only or chief object and reason for making the engagement was to profit by the defendant's property, that would be such a deception and fraud upon him as to vitiate and nullify the contract.

"Inasmuch as the parties are now witnesses, it must be shown that the man charged made an express promise to marry the woman, or he cannot be held liable. . . .

"15. If the jury find that the parties made a mutual promise of marriage, and also find that, on account of the disparity in the ages of the parties, incongruity of their dispositions, traits of character, want of affection for each other, or other causes, that a marriage between them would be unsuitable and result in the unhappiness of both, only nominal damages should be allowed for the breach of the promise."

tion of the court to that aspect of the case any more than to what would constitute fraudulent concealment, in case inquiry was made, we think that the whole matter was fairly within the scope of his requests, and that he well might assume that the instructions as given stated, in the opinion of the court, the rules of law properly applicable to it. *Cork* v. *Blossom, ante,* 330. The court are not unanimous in their view of the questions presented by the bill of exceptions, or in their construction of the judge's charge, but there is no difference of opinion with regard to the principles of law to be applied to the case.

Among other rulings which the defendant requested was the following : " If mutual promises to marry were made, and the defendant was influenced to do so by the fraud or deception of the plaintiff as to her life, lineage, character, traits of character, or property, or former condition in life, his promise does not bind him." In reference to this the court said : " That I should give with the qualification which I have made generally upon the subject. I think there is nothing objectionable in that." We understand that by " the qualification " referred to was meant what the court had said previously in regard to its not being the duty of a party, before making or accepting an offer of marriage, to communicate all the previous circumstances of his or her life, and that a party would not have the right to terminate a contract to marry on the ground of fraud, upon subsequently discovering matters which, if seasonably known, might have prevented the engagement, though not sufficient to justify a party in breaking it off. As thus qualified, the instruction was correct, and the defendant had no proper ground of exception. But we do not think that it meets the objections of the defendant to the sufficiency of the charge in regard to what constituted fraudulent concealment.

The exceptions state that " the jury were instructed at length upon the law applicable to actions for breach of promise of marriage, to which instructions no objection was made, except as appears by the bill of exceptions." We do not understand from this that any instructions on the matter of fraud which were deemed material upon any of the questions raised by the defendant are omitted from the bill of exceptions, but we infer that all of the instructions pertinent to the requests and

contentions of the defendant on that subject are included in the exceptions.

We discover no error in the instructions, or rulings or refusals to rule, or in the admission of evidence, or in the conduct of the trial, except as above stated.

We cannot say that the photographs did not tend to support the statements of the plaintiff in regard to her family, or that they were improperly admitted.*      Whether they were sufficiently verified was for the court, and is not a matter of exception. *Blair* v. *Pelham*, 118 Mass. 420.   *Commonwealth* v. *Morgan*, 159 Mass. 375.                                    *Exceptions sustained.*

---

* The plaintiff offered in evidence photographs of her parents and sister, and of the latter's children, which she testified were correct likenesses, and had been shown by her to the defendant.   They were admitted, against the defendant's exception.