JOHN FOTTLER, JR. *vs.* CHARLES W. MOSELEY.

Suffolk. November 21, 1900. — June 18, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

*Deceit,* Representations, whether material, what is acting upon, whether loss attributable to.

The question whether certain reported sales of the stock of a corporation are fictitious may have an important bearing upon the conduct of a man holding some of the shares and thinking of selling them, and a false representation knowingly made by a broker, that the reported sales were genuine, which induced such stockholder to retain his shares to his loss instead of selling them, will support an action of deceit, if the jury find that on the facts the representation was material.

For the purpose of supporting an action of deceit refraining from action to the plaintiff's loss in reliance upon the false representations of the defendant in legal effect is acting upon the falsehood. It makes no difference whether a plaintiff has been induced to buy property or to refrain from selling it.

Whether the loss suffered by a director of a corporation from his retaining certain shares of the stock of the corporation which he had intended to sell, after a broker falsely and fraudulently had represented to him that certain reported sales of the stock were genuine, is attributable to the fraud, is a question of fact for the jury.

TORT for deceit, alleging that, relying upon the false and fraudulent representations of the defendant, a broker, that certain sales of the stock of the Franklin Park Land Improvement Company in the Boston Stock Exchange from January 1 to March 27, 1893, were genuine transactions, the plaintiff revoked an order for the sale of certain shares of that stock held for him by the defendant, whereby the plaintiff suffered loss. Writ dated February 17, 1896.

At the trial in the Superior Court, *Hopkins*, J., at the close of the evidence, directed the jury to return a verdict for the defendant. The verdict was returned as directed; and the plaintiff alleged exceptions. The findings warranted by the evidence are stated in the opinion of the court.

Besides the facts stated in the opinion, the following facts appeared in evidence: During the time in question, and for some time before, the plaintiff had been in the habit of buying and selling stocks through the defendant as a broker; and in January, 1891, the defendant, at the request of the plaintiff, agreed to carry for him, on margin, three hundred shares of Franklin Park Land and Improvement Company stock, which the plaintiff bought of one Moody Merrill. It appeared that Merrill had been an acquaintance of the plaintiff since 1880 or 1881; that the plaintiff and Merrill were co-directors of the Franklin Park Land and Improvement Company from June, 1891, till June, 1893, and were also co-directors in another corporation; that Merrill was president of the Highland Street Railway Company, was a man well known in Boston, and of good reputation until he absconded in June, 1893, when the Franklin Park stock became of little or no value; that after 1892 Merrill and the plaintiff bought and sold stocks on joint account through the defendant.

*R. W. Nason*, for the plaintiff.

*B. L. M. Tower*, for the defendant.

HAMMOND, J. The parties to this action testified in flat contradiction of each other on many of the material issues, but the

evidence in behalf of the plaintiff would warrant a finding by the jury, that on March 25, 1893, the plaintiff, being then the owner of certain shares of stock in the Franklin Park Land and Improvement Company, gave an order to the defendant, a broker who was carrying the stock for him on a margin, to sell it at a price not less than $28.50 per share; that on March 27 the defendant, for the purpose of inducing the plaintiff to withdraw the order and refrain from selling, represented to the plaintiff that the sales which had been made of said stock in the market had all been made in good faith and had been " actual true sales throughout "; that these statements were made as of the personal knowledge of the defendant, and that the plaintiff, believing them to be true and relying upon them, was thereby induced to and did cancel his oral order to the defendant to sell, and did refrain from selling; and that the statements were not true as to some of the sales in the open market, of which the last was in December, 1892, and that the defendant knew it at the time he made the representations. The evidence would warrant a further finding that in continuous reliance upon such representations the plaintiff kept his stock, when he otherwise would have sold it, until the following July, when its market value depreciated and he thereby suffered loss. The defendant, protesting that he made no such representation and that the jury would not be justified in finding that he had, says that even upon such a finding the plaintiff would have no case. He contends that the representation was not material, that a false representation to be material must not only induce action but must be adequate to induce it by offering a motive sufficient to influence the conduct of a man of average intelligence and prudence, and that in this case the representation complained of, so far as it was false, was not adequate to induce action because the fictitious sales were so few and distant in time, and that therefore it was not material.

It may be assumed that the plaintiff desired to handle his stock in the manner most advantageous to himself, and that the question whether he would withdraw his order to sell was dependent, somewhat, at least, upon his view of the present or future market value of the stock; and upon that question a man of ordinary intelligence and prudence would consider whether

the reported sales in the market were "true sales throughout" or were fictitious, and what was the extent of each. It is true that a corporation may be of so long standing and of such a nature, and the number of the shares so great and the daily sales of the stock in the open market so many and heavy, that the knowledge that a certain percentage of the sales reported are not actual business transactions would have no effect upon the conduct of an ordinary man. On the other hand a corporation may be so small and of such a nature and have so slight a hold upon the public, and the number of its shares may be so small and the buyers so few, that the question whether certain reported sales are fictitious may have a very important bearing upon the action of such a man. Upon the evidence in this case, we cannot say, as matter of law, that the representation so far as false was not material. This question is for the jury, who are to consider it in the light of the nature of the corporation and its standing in the market, and of other matters, including such as those of which we have spoken.

It is further urged by the defendant that one of the fundamental principles in a suit like this is that the representation should have been acted upon by the complaining party and to his injury; that at most the plaintiff simply refrained from action, and that "refraining from action is not acting upon representation" within the meaning of the rule; and further that it is not shown that the damages, if any, suffered by the plaintiff are the direct result of the deceit.

Fraud is sometimes defined as the "deception practised in order to induce another to part with property or to surrender some legal right," Cooley, Torts, (2d ed.) 555, and sometimes as the deception which leads "a man into damage by wilfully or recklessly causing him to believe and act on a falsehood." Pollock, Torts, (Webb's ed.) 348, 349. The second definition seems to be more comprehensive than the first, (see for instance *Barley* v. *Walford*, 9 Q. B. 197, and *Butler* v. *Watkins*, 13 Wall. 456,) and while the authorities establishing what is a cause of action for deceit are to a large extent convertible with those which define the right to rescind a contract for fraud or misrepresentation and the two classes of cases are generally cited without any express discrimination, still discrimination is sometimes

needful in the comparison of the two classes of cases.  Pollock, Torts, (Webb's ed.) 352.

It is true that it must appear that the fraud should have been acted upon.  It is a little difficult to see precisely what is meant by the contention that "refraining from action is not acting upon representation."  If by refraining from action it is meant simply that the person defrauded makes no change but goes on as he has been going and would go whether the fraud had been committed or not, then the proposition is doubtless true.  Such a person has been in no way influenced, nor has his conduct been in any way changed by the fraud.  He has not acted in reliance upon it.  If, however, it is meant to include the case where the person defrauded does not do what he had intended and started to do and would have done save for the fraud practised upon him, the proposition cannot be true.  So far as respects the owner of property, his change of conduct between keeping the property on the one hand and selling it on the other, is equally great, whether the first intended action be to keep or to sell; and if by reason of fraud practised upon him the plaintiff was induced to recall his order to sell, and, being continuously under the influence of this fraud, kept his stock when, save for such fraud, he would have sold it, then with reference to this property he acted upon the representation within the meaning of the rule as applicable to cases like this.  *Barley* v. *Walford*, 9 Q. B. 197.  *Butler* v. *Watkins*, 13 Wall. 456.

The cases of *Lamb* v. *Stone*, 11 Pick. 527, *Wellington* v. *Small*, 3 Cush. 145, and *Bradley* v. *Fuller*, 118 Mass. 239, upon which the defendant relies, are not authorities for the proposition that "refraining from action is not acting upon representation."

As to whether the loss suffered by the plaintiff is legally attributable to the fraud, much can be said in favor of the defendant, and a verdict in his favor on this as well as on other material points might be the one most reasonably to be expected upon the evidence, especially when it is considered that during the years 1892 and 1893 the plaintiff was a director in the company; but we cannot decide the question as a matter of law.  If the fraud operated on the plaintiff's mind continuously, up to the time of the depreciation of the stock in June, 1893, so that he kept his stock when otherwise he would have sold it, and such was the

direct, natural and intended result, then we think the causal relation between the fraud and the loss is sufficiently made out. See *Reeve* v. *Dennett*, 145 Mass. 23, 29.

*Exceptions sustained.*