ROSE M. URTZ, as Administratrix of the Estate of RICHARD M. URTZ, Deceased, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

Fraud — compromise of action for negligence induced by fraudulent representations of defendant — in order to recover damages for loss caused by such compromise, plaintiff must show that she had a valid and existing claim against defendant at time of compromise.

1. In an action for the recovery of damages caused by fraud, the plaintiff must allege and prove that he has been injured by the fraud which he charges. The essential constituents of the action are firmly fixed as representation, falsity, *scienter*, deception and injury. Pecuniary loss to the deceived party is absolutely essential to the maintenance of the action. Fraud and deceit alone do not warrant the recovery of damages. Deceit and injury must concur.

2. In an action which was brought, not to enforce or vacate a compromise of an action, alleged to have been procured by the fraud of the defendant, but to recover the actual pecuniary loss sustained by the plaintiff, the jury found that the deceit of the defendant moved the plaintiff to release unto the defendant, in consideration of the sum of five hundred dollars, whatever right or cause of action she

had against it through the killing of her husband.  *Held,* that there was error in the refusal of the trial judge to charge that the plaintiff in order to maintain the action must show, in the first instance, that she had a valid and existing claim against the defendant originally, and in charging that "she must show that there was a claim which was disputed and contested; that she was alleging a claim based upon facts sufficient that she could reasonably apprehend that she had a just claim." (*Gould* v. *Cayuga County National Bank,* 99 N. Y. 333, followed.)

Urtz v. N. Y. C. & H. R. R. R. Co., 140 App. Div. 915, reversed.

(Argued February 13, 1911; decided May 16, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 13, 1910, affirming a judgment in favor of plaintiff entered upon a verdict.

The action is to recover the damages sustained by the plaintiff through the false representations made to her by the defendant.

April 9, 1906, the plaintiff's husband and intestate was killed at a highway crossing of defendant's railroad through a collision between an engine of the defendant and a wagon in which the intestate was riding. The team of the intestate was also killed and his wagon demolished. One McCormick was a division claim agent of defendant, and it was his duty to investigate the accident and report the facts to its chief claim agent with his opinion as to its liability. He investigated the circumstances surrounding the accident, and then entered upon a series of misrepresentations to both the plaintiff and defendant. The result of those to the defendant was that on April 17, 1906, he was authorized by it to settle with the plaintiff on the best terms he could within the sum of twenty-five hundred dollars, and on April 27 the defendant forwarded to him its check for $2,250, payable to the order of and to be delivered to the plaintiff upon the execution by her of a voucher and a general release of her claim. On April 30

McCormick told the plaintiff that he had looked up all the. facts and talked with everybody who knew anything about the case; he had found out that the intestate was drunk and when a man told him that the train was coming he said he could take care of himself, and he didn't care whether the train was coming or not; the train was going eight miles an hour and the bell was ringing and the whistle blowing; one could see up and down the track for half a mile at the point of the accident; he would pay well for the team and wagon but not for killing the intestate, as the law was now that they would not have to pay for anything only property; the team and wagon were worth about $200 and the defendant wanted to be liberal and made it $500, and that was all it would pay. The plaintiff on that occasion accepted $500 in full settlement of her claim and signed the voucher and release. She subsequently brought this action, alleging by her complaint that all the representations made by McCormick were false and fraudulent and induced her to make the settlement and demanding judgment for the damages she had thereby sustained. At the trial the plaintiff introduced evidence in proof of the false and fraudulent nature of the statements of McCormick and her reliance thereon, and the defendant introduced opposing evidence. The trial judge in his charge instructed the jury in substance that if they found that the statements made by McCormick were misrepresentations of facts and were fraudulently made and were relied upon by the plaintiff, then she was entitled to recover as damages "the amount the plaintiff could reasonably obtain on a settlement where nothing but the true facts were given or relied upon; deduct from that the amount paid, and the residue would be the recovery. In other words, how much could the plaintiff reasonably have demanded and received from the defendant by way of settlement if these false representations had not been made?" The defendant's counsel requested the judge to charge that the plaintiff, in order

to maintain the action, must show, in the first instance, that she had a valid and existing claim against the defendant originally, and the judge responded, "I refuse to charge in that language. She must show that there was a claim which was disputed and contested; that she was alleging a claim based upon facts sufficient that she could reasonably apprehend that she had a just claim and that the defendant could also feel that she had a just claim." Proper exceptions thereto were taken. The verdict of the jury in favor of plaintiff was unanimously affirmed.

*Henry Purcell* for appellant. The plaintiff failed to show that she had any valid claim against the defendant which was the subject of compromise. (*Wieland* v. *D. & H. Co.*, 167 N. Y. 19; *Baxter* v. *A. & S. R. R. Co.*, 190 N. Y. 439; *Lamb* v. *Union Ry. Co.*, 195 N. Y. 260.)

*Fred B. Pitcher* for respondent. It was not essential for plaintiff to show that she originally had a valid claim. (*Gould* v. *C. C. Nat. Bank*, 99 N. Y. 333; *Crans* v. *Hunter*, 28 N. Y. 389; *Stewart* v. *Ahrenfeldt*, 4 Den. 189; *Seaman* v. *Seaman*, 12 Wend. 381; *Strong* v. *Strong*, 102 N. Y. 69.)

COLLIN, J. In an action for the recovery of damages caused by the fraud of the defendant, the plaintiff must allege and prove that he has been injured by the fraud which he charges. The essential constituents of the action are firmly fixed and are tersely stated in *Arthur* v. *Griswold* (55 N. Y. 400), as, "representation, falsity, *scienter*, deception and injury." Pecuniary loss to the deceived party is absolutely essential to the maintenance of the action. Fraud and deceit alone do not warrant the recovery of damages. Deceit and injury must concur. (*Taylor* v. *Guest*, 58 N. Y. 262; *Ettinger* v. *Weil*, 184 N. Y. 179.)

In the action at bar the plaintiff was not defrauded by the transactions between herself and McCormick unless, as a result thereof, she lost something of value. In case that result was a gain to her or purely negative, representing neither gain nor loss, clearly there is no room for the application thereto of any rule of damages; the enforcement of any measure of damages, when loss and damage are wholly lacking, is impossible and inconceivable. (*Dung* v. *Parker*, 52 N. Y. 494; *Hicks* v. *Deemer*, 187 Ill. 164.) In *Hicks* v. *Deemer* (*supra*) the action was to recover the damages sustained by the plaintiff because of the false representations on the part of the defendants, in that they induced the plaintiff to convey his interest in certain land under the erroneous belief created by defendants' deceit that he owned only a life estate therein, whereas, as he alleged, he was the owner in fee simple. At the trial the plaintiff gave evidence supporting his absolute ownership and the defendants sought to prove that his sole estate was an interest for his life. The court held that plaintiff's right of action depended upon his ownership of the fee and that the trial court erred in refusing to charge the jury that before they could find injury and damage to the plaintiff they must find that he was the owner in fee simple of the land.

The jury, in the case here, found that the deceit of the defendant moved the plaintiff to release unto the defendant, in consideration of the sum of five hundred dollars, whatever right or cause of action she had against it through the killing of her husband. Unless the right of action had a value and a value greater than five hundred dollars, the plaintiff was not defrauded. If what she parted with had a value less than or only equal to the value of that which she received, she was not injured; if greater, she was injured and in a sum equal to its excess of value. The basic principle underlying all rules for the measurement of damages in actions for fraud and deceit

is indemnity for the actual pecuniary loss sustained as the direct result of the wrong. (*Krumm* v. *Beach*, 96 N. Y. 398.) Neither advantage nor disadvantage resulting to the plaintiff from the settlement enters in any way into our consideration. The question is what was the value of that with which plaintiff parted and what was the value of that which she received? If the plaintiff's claim against the defendant had been based upon an alleged promissory note made by defendant, and McCormick had effected a compromise thereof by false and fraudulent statements as to defendant's solvency and the existence of a counterclaim, she, in an action to recover her damages caused by the fraud, must have given evidence in proof of the validity of the note to afford the jury a starting point for the measurement of her damages, and if they found that the note was forged and not made by defendant, they would find also that she had sustained no damage and could not maintain the action. Unless she had the valid note of the defendant, she had and released in the compromise nothing of value. Resuming the discussion of the present case, the jury were bound, having found the fraud, to determine whether the plaintiff was injured through the fraud, and, if injured, the sum of her damages. In case the right of action had no value, she had gained by the transaction and was not injured. It had no value whatever if the true state of facts disclosed that it was an invalid and non-existing claim or, in other words, that the defendant was not negligent, or, if the defendant was negligent, that the intestate was not free from contributory negligence. If, however, the true state of facts would have established that the defendant was negligent and the intestate free from contributory negligence, then the plaintiff had a valuable right of action, the acquirement of which through the fraud may have injured her. Until the jury found the real facts and that they created a valid claim against the defendant, they had not a basis for estimating the damages the plaintiff had

sustained. The action is not to enforce or vacate the compromise but to recover the actual pecuniary loss sustained by the plaintiff. An alleged value of the claim based upon the accident and the death or facts sufficient to warrant the reasonable belief of the plaintiff that she had a just claim, is of a nature too speculative and wagering to be recognized by the law in this action for fraud. The jury in considering the question of damages should first ascertain whether or not the plaintiff was originally entitled to a recovery of some amount. Otherwise they could not determine whether, by executing the release, she parted with value and if they could not determine that, they could not decide whether or not she was damaged. Through what method or by what means would they be able to know that the sum of five hundred dollars was not equal to the fair value of the right of action until they knew that the right of action had validity and would entitle her to some amount? She was entitled to the fair value of this disputed claim but that value must be ascertained through a rule possessing reasonable certainty and working a reasonably just result. If the jury determine that she was not originally entitled to recover, then their verdict would be for the defendant. If they determine that she was entitled to recover, then they would proceed to measure the damages and the rule by which they should be guided therein has been clearly expressed by us in *Gould* v. *Cayuga County National Bank* (99 N. Y. 333). Assuming that the parties meant to avoid litigation and compromise their dispute, and that the true facts and defendant's contradiction of them were disclosed, how much could the plaintiff have reasonably demanded and the defendant reasonably have allowed as a final compromise above and beyond the $500, in fact allowed and received? That the jury must answer. They would take into view the probabilities of the successful enforcement of the cause of action, the probable extent and expense of the expected litigation over this disputed claim,

the law's delays, the probability of the continuing solvency of the defendant and such other facts pertinent to the question of damages as the evidence presented. What under all the conditions and circumstances was this claim of the plaintiff, valid under the true, yet opposed and contradicted, state of facts, worth for purpose of sale, transfer or cancellation, if anything at all, above the five hundred dollars?

In *Gould* v. *Cayuga County National Bank* (*supra*) the action was brought to recover damages sustained by the plaintiff by means of false representations on the part of the defendants. Plaintiff's cause of action was that he had loaned government bonds while on deposit with defendant bank for safekeeping to the defendant bank upon the agreement of the defendants that the bank would replace the bonds within a certain period, and he was advised after the expiration of that period that there were no bonds on deposit belonging to him; that he thereupon made a claim that the defendants return the bonds or pay him their value, which they rejected upon the ground that the cashier of the defendant bank had stolen the bonds from the bank; that negotiations were entered into between the plaintiff and the defendants in regard to a settlement of the claim, it being insisted on the part of the plaintiff and denied on the part of said defendants that the defendants were legally bound to replace said bonds or pay him the value thereof; that throughout these negotiations it was represented upon the part of the defendants that the bonds were within the agreed period after the loan replaced with the defendant bank for the plaintiff and thereafter had been wrongfully taken from it by the cashier and converted to his own use; that plaintiff was ignorant of and unable to ascertain the fact and was induced to believe the representations of defendant and to settle his claim and execute a release thereof in consideration of twenty-five thousand dollars; that he subsequently learned that the bonds were never replaced

12

and that the representations were false and fraudulently made. The defendants denied that the bonds had not been replaced as agreed and the fraudulent representations and alleged that the claim of the plaintiff had been validly compromised and released. The issues thus framed were litigated and the trial justice nonsuited the plaintiff, the plaintiff asking to go to the jury upon each of the questions, (1) were the bonds replaced, (2) were the fraudulent representations made. The General Term set aside the nonsuit and ordered a new trial upon the ground that the jury would have been justified in finding: 1st. That the bonds were never replaced in the vault or delivered to Mr. Gould.   2d. That the fraudulent representations were made and to induce the plaintiff to compromise his claim, and plaintiff relying thereon was induced to compromise and release his claim. From the order of the General Term the defendants appealed to this court and the order of the General Term was affirmed. Judge FINCH, writing for this court, said: "If we can see that the sum received as the then fair value of the disputed claim was not such value, and would not have been so received had the truth been told as it was known or believed, but instead a larger sum would have been required as the condition of a compromise, why is not the fraud in inducing the inadequate sum to be accepted a fraud in the subject matter of the compromise agreement?" (p. 338.) And again he said: "If no falsehood as to the facts had been told him (the plaintiff), while defense and resistance were still threatened and contemplated, and his claim still disputed and denied, and a litigation needed to enforce his rights, how much more than the sum allowed ought he to have received and the defendants to have paid by way of compromise?" (p. 340.) And still again: "The result will be that the plaintiff, affirming the compromise agreement and unable to recover the contract balance, is entitled in accordance with the general rule to have such compromise agreement made as good for him as

it reasonably and fairly would have been if only the truth had been told instead of a falsehood asserted. When that is done the loss due to the fraud, and that only, is recovered; the true value of the disputed claim and not the false value." (p. 341.) We have written thus at length concerning the *Gould* case for the purpose of showing as clearly as possible the error of respondent's counsel in asserting that it conclusively decides that the plaintiff was not required to show that she had at the time of the compromise a valid and existing claim against the defendant. In that case the validity of the plaintiff's claim rested upon the fact that the bonds were replaced on deposit with the defendant bank. Whether they were was an issue made by the pleadings and litigated at the trial. The General Term expressly found that the evidence justified the jury in finding that they were and that such fact and the fraudulent representations and plaintiff's belief therein and reliance thereon constituted fraud. This court assumed throughout that part of the opinion relevant to the questions now before us that the issues of fact were established in the plaintiff's favor; that the bonds were replaced, and the plaintiff had a valid and subsisting claim against the defendant which he compromised under fraudulent representations relied upon by him.

There was error in the refusal of the trial judge to charge that the plaintiff in order to maintain the action must show, in the first instance, that she had a valid and existing claim against the defendant originally, and in charging that "she must show that there was a claim which was disputed and contested; that she was alleging a claim based upon facts sufficient that she could reasonably apprehend that she had a just claim."

Inasmuch as the decision of the Appellate Division was unanimous, we do not consider the contention of the appellant that the evidence did not establish ordinary care and caution on the part of the plaintiff and fraud on the part of the defendant.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

VANN, J. (dissenting). I dissent upon the ground that the plaintiff was not bound to show that she had an absolute and certain right of recovery in an action for negligence had one been brought, for it was sufficient if she proved that she had a reasonable chance to recover. A compromise does not necessarily involve the surrender of a certainty, but has valid support if it involves the surrender of a reasonable probability. A reasonable chance to recover a sum of money has a pecuniary value depending upon the strength of the probability and the plaintiff lost that chance on account of the fraud practiced upon her by the defendant through its dishonest agent. She parted with value when she gave up her chance of convincing a jury that the defendant was negligent, and that her intestate was free from contributory negligence. The action for negligence, if brought, might have involved a close question of fact, and she was not obliged to convince the jury in this action that the jury in that would necessarily have found in her favor. She might or might not have succeeded in that action, but she lost her chance to make the attempt when she executed the release in question relying upon the false representations made in behalf of the defendant. The jury could find, and, as we must presume, they did find that her chance of recovery was worth as much more than the sum received on the compromise as to warrant the verdict rendered in her favor for the balance.

These views, instead of conflicting with those of the court in a case relied upon by the majority of my associates (*Gould* v. *Cayuga County National Bank*, 99 N. Y. 333), are in strict accord therewith, as it appears to me. The nonsuit granted at the trial in that case was set aside by the court at General Term and we affirmed their judgment. As Judge FINCH held in that case, so I say in this that the

question is what "was the then fair value of the disputed claim which was released?" The plaintiff herein has recovered on that basis only, and, hence, I vote to affirm.

CULLEN, Ch. J., GRAY and WERNER, JJ., concur with COLLIN, J.; HISCOCK, J., concurs with VANN, J.; HAIGHT, J., absent.

Judgment reversed, etc.