CLARENCE H. HOLLOWAY *vs.* THOMAS FORSYTH.
ALEXANDER J. SMITH *vs.* SAME.
JOHN W. WHEELER *vs.* SAME.
MARY L. WHEET *vs.* SAME.
PATRICK J. HARNEY *vs.* SAME.

Suffolk.   December 7, 1916. — March 13, 1917.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Deceit.*

The declaration in an action for deceit alleged that the defendant falsely represented to the plaintiff that a certain rubber company had a contract to dispose of its entire product to a certain well known corporation at one dollar per pound, whereas by reason of a secret rebate of forty per cent, which was contrived by the defendant for purposes of deception, the contract in effect was to take the product at sixty cents per pound, that the defendant further falsely represented that the rubber company had a secret patented process which made a valuable substitute for rubber without the product of the rubber tree, that the substitute thus produced had "been successfully subjected to many important tests," that it was an artificial rubber or "crude rubber without the admixture of the product of the rubber tree," that it vulcanized perfectly and that "the product was being placed on the market at a very low cost of production," that the defendant made these representations knowing them to be false and intending them to be relied upon by the plaintiff and other persons, who thereby would be induced to purchase shares in the rubber company and to refrain from selling the shares that they had, that relying on these representations the plaintiff bought certain shares of the stock of the rubber company and refrained from selling other shares, all of which shares were wholly without value, whereas, if the defendant's representations had been true, the shares would have been worth at least what the plaintiff paid for them, at which price he would have sold them.   Upon demurrer it was *held,* that the declaration stated a good cause of action.

FIVE ACTIONS OF TORT for false and fraudulent representations whereby the plaintiffs' were induced to buy or to refrain from selling shares of preferred stock in the North American Rubber Company, as stated and described in the opinion.   Writs dated respectively February 11, March 8, April 29, May 18 and June 8, 1915.

In each case the defendant demurred.

The demurrers, as well as demurrers of the same defendant in

thirty-two other actions each brought against him by a different plaintiff, came on to be heard before *McLaughlin*, J., who made orders overruling all the demurrers and by agreement of the counsel reported the five cases as "typical ones in their respective classes" for determination by this court.

*J. F. Cronan*, (*C. J. Smerdon* with him,) for the defendant.

*W. H. Foster*, (*G. C. Lawrence* with him,) for the plaintiffs.

PIERCE, J. These are actions of deceit brought by thirty-seven plaintiffs, who allege that, relying on certain printed and oral representations made or caused to be made by the defendant, they were induced to purchase or to refrain from selling shares of stock in the North American Rubber Company, a corporation organized in 1909, for the purpose of manufacturing a substitute for rubber. The defendant demurred to all the declarations, the demurrers were overruled and five typical declarations, with their respective demurrers, are reported to this court.

It is further alleged in each declaration, that in 1910, the defendant was interested in the North American Rubber Company; that he was a stockholder or a holder of an option for the purchase of stock in said company; that he was an officer and large stockholder in the Boston Belting Company, a corporation engaged in the manufacture of finished products of rubber; that Wheeler and Shaw were officers of the North American Rubber Company, were the promoters of said company and its agents for the sale of the capital stock, and that they offered it for sale to the public through advertising in the newspapers and through various brokers in the city of Boston and elsewhere; that the defendant early in the year 1910, acting in behalf of the Boston Belting Company, made a contract with Wheeler and Shaw, acting for the North American Rubber Company, for the sale of the entire output of the North American Rubber Company at the price of sixty cents per pound; that the defendant through Wheeler and Shaw, and otherwise, several weeks before March 10, 1910, represented to the plaintiffs and others similarly situated, that the Boston Belting Company had agreed to purchase the entire output of the North American Rubber Company at one dollar per pound; that when said contract was made the North American Rubber Company and, Wheeler and Shaw, were heavily indebted to the defendant and were unable to discharge their indebtedness; that

the defendant and Wheeler and Shaw desired to dispose of the capital stock of the North American Rubber Company; that they formed a plan and agreed with each other to do, and, in pursuance of and in accordance with said plan, did each of the things hereinafter alleged to have been done; that on March 10, 1910, the defendant and Wheeler and Shaw caused to be executed two separate agreements; that in one of said agreements the Boston Belting Company agreed to purchase the entire output of the North American Rubber Company for a certain period at one dollar per pound; that in the second agreement, executed on the same day, the North American Rubber Company agreed to rebate or pay back to the Boston Belting Company forty per cent from the price stipulated in the first agreement; that as a part of the plan, the defendant and Wheeler and Shaw agreed that the dollar per pound contract should be shown by Wheeler and Shaw to prospective purchasers of stock and to brokers selling the stock of the North American Rubber Company; that Wheeler and Shaw should represent to the public, or to the brokers who were dealing directly with their customers and the public, that the Boston Belting Company had executed a contract at one dollar per pound and that the defendant should make or cause to be made representations to this effect in answer to any inquiries made to him in regard to the contract; that the defendant executed the two agreements for the purpose of placing in the hands of Wheeler and Shaw an instrument which would create a false impression upon the minds of the plaintiffs and others similarly situated, and at the same time be apparently conclusive evidence to brokers and purchasers of the representations made by Wheeler and Shaw; that the representations were made by the defendant with the expectation that they would be repeated, and would induce persons to purchase and to refrain from selling stock in the North American Rubber Company; that Wheeler and Shaw, in accordance with the plan, did make such representations and showed the dollar per pound contract or copies thereof, to prospective purchasers and brokers; that the defendant and Wheeler and Shaw, at all times while the stock was being sold, kept secret the fact of the second agreement; that the defendant made certain representations to a reporter for a newspaper; that on March 19, 1910, the said representations were published in the "Boston

News Bureau;" that after the article had been written, in which said representations were contained, and before the article was published in said paper, "the defendant read the said article and pronounced it to be correct;" that the representations were substantially, that the North American Rubber Company had a secret patented process which made a substance without the product of the rubber tree; that the product had been successfully subjected to many important tests; that those tests had demonstrated its utility in the manufacture of almost every article into which common rubber enters; that the product was an artificial rubber that could be used successfully in the manufacture of articles into which fully ninety per cent of the present output of gum rubber enters; that the defendant Forsyth had experimented for six months; that the product was being placed on the market at a very low cost of production; that the total cost of production was only about forty cents per pound; that the product was of tremendous importance to the rubber trade; that it should go a long way towards relieving existing conditions which had brought about the high prices for crude rubber; that the Boston Belting Company had a contract with the North American Rubber Company to purchase its product for a certain time; that the Boston Belting Company's interests were in no way identified with the North American Rubber Company except as a buyer of its product in the same manner as it bought crude rubber from other dealers.

In each of the declarations it is alleged that the defendant and Wheeler and Shaw made said representations to numerous brokers and other persons likely to repeat said representations to persons having money to invest, and showed to said brokers and other persons the said dollar per pound contract, but did not show to said brokers and other persons the secret forty per cent contract; that Wheeler and Shaw and certain of said brokers and other persons made and repeated said representations to the plaintiffs and showed the plaintiffs a copy of the dollar per pound contract and informed the plaintiffs of the fact that each of said representations had been made and published and frequently repeated by the defendant Forsyth; that the defendant did not inform the plaintiffs of the agreement to rebate forty per cent of the dollar per pound contract; that the defendant concealed the fact of

said agreement; that the plaintiffs did not know of the secret agreement until long after they had purchased or were induced to refrain from selling their stock; that the plaintiffs read the said representations in the newspapers; that they believed said representations to be true; that relying on them and being induced thereby, they purchased and refrained from selling certain shares of stock; that the plaintiffs would not have bought or refrained from selling said shares of stock if the defendant had not concealed the agreement for rebate; that the plaintiffs were wholly ignorant that the said representations were false; that said shares of stock are wholly valueless, whereas if the said representations had been true, the stock would have been worth at least what the plaintiffs paid for it, or the market price, which was the price at which the plaintiffs would have sold the stock; that the said representations were made by the defendant with the expectation and intention that they would be repeated and would induce persons to purchase and to refrain from selling stock in the North American Rubber Company.

In the cases of *Wheeler* v. *Forsyth* and *Harney* v. *Forsyth* it is further alleged in the declarations that the defendant personally represented to these plaintiffs that the defendant was wholly familiar with the said product of the North American Rubber Company; that he knew what the finished product was; that it was an artificial rubber and that there was no real rubber in it; that he knew all the ingredients and constituents of said product; that he knew how it was made and that he had been to the factory of the North American Rubber Company and had manufactured its product with his own hands; that the Boston Belting Company was paying one dollar a pound to the North American Rubber Company for its product; that this was being paid under a contract whereby the Boston Belting Company was to take all the product of the North American Rubber Company, and that the product was of good commercial value. It is alleged in each declaration that the representations were in fact wholly false, as the defendant at all times well knew.

The demurrer admits that the representations, upon which the plaintiffs relied, were published in a newspaper called the "Boston News Bureau" on March 19, 1910, under a heading entitled "North American Rubber Company. An Enterprise which may

become an important factor in the rubber trade;" that the defendant made said representations to a reporter for that newspaper, that "after the article had been written in which said representations were contained and before the said article was published in said paper, the defendant read the said article and pronounced it to be correct," and caused or permitted it to be published in said paper.

In the article as published, two paragraphs in quotation marks are introduced by a paragraph which reads: "The following statement of Mr. Forsyth is one which will be read with great interest as coming from one who is acknowledged to have few superiors as a practical rubber manufacturer. Mr. Forsyth says: . . ."

The defendant contends that he is liable only for representations which appear within the quotation marks, because only that part of the article is held out to the public and to the plaintiffs as having been made by him. The several declarations allege that the defendant read the article after it was written and before it was published, "pronounced it to be correct," and "caused and permitted" it to be published.

We think the defendant is legally responsible for the whole published article. Although not explicitly charged, it sufficiently appears that the article as a whole, and the representations therein contained, were made to the public through the newspaper, with the object of inducing every or any individual member of the public to act upon the representations so made. *Andrews* v. *Mockford,* [1896] 1 Q. B. 372, 382.

The several declarations allege that the plaintiffs read the representations, believed the representations, relied on them and were thereby induced to buy or to refrain from selling the stock of the North American Rubber Company to their harm, and pecuniary damage. It is plain the several plaintiffs acquired rights against the defendant. *Nash* v. *Minnesota Title Ins. & Trust Co.* 159 Mass. 437, 442. *Hunnewell* v. *Duxbury,* 154 Mass. 286, 288. *Windram* v. *French,* 151 Mass. 547, 550. *Swift* v. *Winterbotham,* L. R. 8 Q. B. 244. *Carlill* v. *Carbolic Smoke Ball Co.* [1893] 1 Q. B. 256. The concerted concealment of the existence of the written contract to rebate to the Boston Belting Company forty per cent of the amount called for by its agreement to take

the entire output of the North American Rubber Company for a certain period at one dollar per pound, whenever the last named contract was spoken of or shown to prospective customers, brokers and other persons, with the expectation and intention that the fact that there was such a contract would induce persons to purchase or to refrain from selling stock in the North American Rubber Company, gave a fictitious and false value to that contract. This was a material misrepresentation of fact to the plaintiffs and others similarly situated, who relied on the integrity of the contract and were enticed to purchase or to refrain from selling stock, by the concealment of the rebate contract, knowledge of which was necessary to a correct understanding of the value of the dollar per pound contract. *Kidney* v. *Stoddard*, 7 Met. 252. *Van Houten* v. *Morse*, 162 Mass. 414, 417. *Oakes* v. *Turquand*, L. R. 2 H. L. 325, 342. *Peek* v. *Gurney*, L. R. 6 H. L. 377, 403.

The representation that "the North American Rubber Company had a secret patented process which made a substance without the product of the rubber tree," the representation that the product "has been successfully subjected to many important tests," the representation that the product was an artificial rubber or "crude rubber without the admixture of the product of the rubber tree," the representation that "it vulcanizes perfectly," the representation that the defendant had experimented for six months, were each and all of them statements of past or existent facts which a prudent person might regard as important elements to be taken into consideration in the determination of the present and prospective value of the stock. It is plain the corporation had a most valuable asset in the secret patented process, if by its means it could produce for commercial use a substitute for crude rubber, especially if "the product was being placed on the market at a very low cost of production." These statements were not representations protected or permitted as dealers' talk, nor did they relate solely to future probable profits. See *Braley* v. *Powers*, 92 Maine, 203. These representations are alleged to have been wholly false, to have been believed by the plaintiffs and to have been relied on by the plaintiffs.

It is also alleged that the defendant made the representations with the intention and expectation that they would be believed

and relied on by the plaintiffs. The motive of the defendant is not in issue. "The defendants might honestly believe that the shares were a capital investment, and that they were doing the plaintiff a kindness by tricking him into buying them. I do not say this is proved, but if it were, if they did trick him into doing so, they are civilly responsible as for a deceit." *Smith* v. *Chadwick*, 9 App. Cas. 187, 201.

The second counts of the declarations of *Wheeler* v. *Forsyth* and *Harney* v. *Forsyth* are alike. Their effect is to connect the defendant more closely with the representations, but they do not require separate consideration. The remaining representations may fairly be said to relate to matters of opinion concerning, or belief in, the future commercial success of the product. See *Kimball* v. *Bangs*, 144 Mass. 321; *Nash* v. *Minnesota Title Ins. & Trust Co.* 159 Mass. 437. The declarations sufficiently set out the causes of action and require no extended discussion.

The result is that the order overruling the several demurrers must be affirmed.

*So ordered.*