### GARCIA v. FANTAUZZI.

Circuit Court of Appeals. First Circuit. June 20, 1927.

On Petition for Rehearing, Sept. 7, 1927.

No. 1991.

**1. Pleading ⊚═364(1)—Motion to strike out is remedy in case of superfluous and irrelevant allegations.**

Remedy for defects in complaint containing superfluous and irrelevant allegations is motion to strike out.

**2. Pleading ⊚═48—General demurrer cannot be sustained, if complaint, fairly construed, states case.**

A general demurrer cannot be sustained, and plaintiff *held* remediless, if, fairly construing complaint, a case is stated.

**3. Bastards ⊚═16—Complaint by natural child for damages against alleged father, based on avoidance of duty to support and conspiracy in causing paternity to be ascribed to another, held good (Comp. St. Porto Rico, § 469).**

Complaint in action by natural child for damages against alleged father, alleging failure of support and education and conspiracy to cause plaintiff's paternity to be ascribed to a negro barber, *held* sufficient as against demurrer, in that act and omission, within Comp. St. Porto Rico § 469 (Civ. Code Porto Rico, § 1803), are both alleged; gravamen of case being damages for fraud in preventing plaintiff from asserting truth as to paternity, and thus having environment and education to which he was entitled.

**4. Bastards ⊚═16—In Porto Rico, father of natural child may be held for damages resulting from failure to support and educate child (Civ. Code Porto Rico, § 195).**

In Porto Rico, the real father of natural child, on whom rested primary duty of support and education, under Civ. Code Porto Rico, § 195, may be held for damages resulting from his failure of duty, effected and aggravated by harmful means used to escape such duty.

**5. Bastards ⊚═16—Natural child may sue alleged father for damages for failure of support, notwithstanding allegations that another had falsely acknowledged paternity.**

Natural child *held* not precluded from maintaining action against alleged father for failure of support and education and for conspiracy to cause paternity to be ascribed to negro barber, because of allegation that such negro barber and mother were fraudulently induced to state that he was plaintiff's father, since allegation that such instrument was procured by fraud destroys its effect.

**6. Bastards ⊚═16—Natural child's mother may sue alleged father in behalf of child for damages for failure to support and educate child, where another's acknowledgment of paternity was invalid (Civ. Code Porto Rico, §§ 195, 222).**

Where acknowledgment of paternity of natural child was fraudulent, mother was natural guardian, and entitled to bring suit against alleged father for damages for his failure of support and education, required by Civ. Code Porto Rico, § 195, and it was not necessary, under section 222, that it be brought by father falsely acknowledging paternity.

**7. Bastards ⊚═16—Judgment for filiation was not condition precedent to natural child's action against alleged father for damages for failure of support and conspiracy to ascribe paternity to another (Civ. Code Porto Rico, § 195).**

Where purpose of action by natural child against alleged father was to recover damages for failure of support and education required by Civ. Code, § 195, and for conspiracy to cause paternity to be ascribed to another, a judg-

ment for filiation was not necessary condition precedent to maintenance of action.

Johnson, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Porto Rico; Ira K. Wells, Judge.

Action by Jose Esteban Garcia, by his mother, Jacinto Garcia y Torrendell, against Antonio Fantauzzi. Judgment of dismissal, and plaintiff brings error. Reversed and remanded.

E. B. Wilcox, of San Juan, Porto Rico, for plaintiff in error.

Francis E. Neagle, of New York City (Tomas Bernardini de la Huerta, of Guayama, Porto Rico, and O. B. Frazer, of San Juan, Porto Rico, on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. The court below sustained a demurrer, and dismissed the complaint. The case comes here on a writ of error with numerous assignments. Jurisdiction is grounded on diversity of citizenship. It is a very unusual case.

The complaint, filed June 1, 1925, sets up that the plaintiff is the natural son of defendant and Jacinto Garcia y Torrendell; that she is the plaintiff's guardian; that both are citizens of the United States domiciled in Porto Rico; that the defendant is a citizen of France, domiciled in France, "and is a man of ability, intelligence, education, and wealth, and of high social position, both in Porto Rico and in France"; that he owns property amounting to about $3,000,000; that he has married and has three children by his wife, with whom he lives in France.

It is alleged that in 1906, when there was no legal impediment to prevent their marriage, defendant and Jacinto lived together as man and wife, with the resultant birth of the plaintiff as the natural child of defendant; that on many occasions both mother and son importuned the defendant to acknowledge the son; that, while privately admitting the relationship, the defendant has always refused to make public acknowledgment, and to provide properly for his rearing, support and education; that, as a result, the plaintiff has been reared in poverty and forced to live under sordid and immoral conditions, to his humiliation, prejudice, and damage; that in February, 1910, "defendant willfully, wantonly, and criminally, by conspiracy with parties to plaintiff unknown

and by the payment of a large sum of money, induced, by means of fraud and misrepresentation, plaintiff's mother and one Jose Dolores Diaz y Aponte, a colored barber, without education or means, or social standing, a man of immoral and vicious life and habits, to appear before a notary public in Porto Rico, and to falsely state in writing in a public document that the said Jose Dolores Diaz y Aponte is the plaintiff's father"; that defendant's agents, at defendant's instigation, represented to plaintiff's mother and the said Jose that by the terms of the document they were signing Jose was only adopting plaintiff as his son; that in 1925 plaintiff's mother and said Jose, having learned that the document signed by them in 1910 was not an adoption of said plaintiff, but purported to be a legal recognition of plaintiff as the son of said Jose, appeared before a notary public, and by public document revoked the document of 1910 as being untrue, and having been procured through the false representations of defendant and those acting with him; that thereafter the plaintiff and his mother again demanded that defendant acknowledge plaintiff as his son, and that defendant refused so to do, or to make any provision for his support and education; that in 1920 the defendant created in New York a trust fund of $3,000 in the hands of said Jose for the plaintiff's benefit, but that plaintiff has received no appreciable benefit therefrom.

As a result of the defendant's failure to recognize plaintiff as his own child and his wrongful acts in causing the plaintiff to be reputed as the "son of an uneducated negro barber of no means or standing, and of immoral life and habits, under whose care and influence plaintiff was forced to live through the criminal conduct of defendant," the defendant is alleged to have laid himself liable for actual damages of $100,000 and exemplary damages of $150,000.

The case thus stated must be considered in the light of the Porto Rican statutes dealing with the rights of a child born out of wedlock.

The plaintiff is a natural child, as distinguished from an illegitimate or adulterine child. The Civil Code provides:

"Sec. 193. Natural children are those born out of wedlock, from parents who, at the moment when such children were conceived or were born could have intermarried with or without dispensation.

"The natural child may be recognized by the father and mother conjointly or by one of them only either in the record of birth or

in the testament [will] or in any other public instrument.

"*The father is obliged to recognize the natural child:*

"1. When there exists an indubitable statement in writing of the father wherein he expressly acknowledges his paternity.

"2. Where the child has uninterruptedly enjoyed the condition as of a natural child of the defendant father justified by acts of the same father or of his family.

"3. When the mother was known to have lived in concubinage with the father, both during her pregnancy and at the time of the birth of the child.

"4. When the child may present any authentic evidence of his paternity.

"The mother shall likewise be obliged to recognize a natural child in the same cases as the father, and further where the act of the confinement and the identity of the child are fully established.

"The child, if of age, cannot be recognized without his consent.

"When the recognition of the minor is not made at the time of recording the birth or in the testament, the approval of the judge of the district court of the district where the child resides, with the concurrence of the fiscal, shall be necessary.

"Sec. 194. The action for the recognition of natural children, can only be established during the life of the presumptive parents, and a year beyond their death except in the following instances:

"1. If the father or the mother shall have died during the minority of the child, in which case, the child may bring his action before the first four years of his having attained his majority, shall have elapsed.

"2. If after the death of the father or mother there shall appear a written statement or document, of which no notice was previously had, wherein the child is expressly recognized.

"In this case the action shall be established within the next six months after the document has been discovered.

"The recognition of a child not having the qualifications provided for in paragraph first of section 193 can be disputed by whomsoever may be affected thereby.

"Sec. 195. A natural child has the right:

"1. To use the surname of the parent making the recognition.

"2. To be supported.

"3. To receive the hereditary portion determined in this code."

Section 212 provides that:

"Support is understood to be all that is indispensable for maintenance, housing, clothing and medical attention, according to the social position of the family.

"Support also includes the education and instruction of the person supported when he is a minor."

It is thus manifest that the rights of a natural child under the law in the jurisdiction in which the plaintiff was begotten and born, are much greater than the rights of a bastard at common law, or under the common law as modified by the statutes enacted in most of our states. Compare 7 C. J. pp. 939, 948, 950, 951, 955, 958–961; Sanders v. Sanders, 167 N. C. 319, 83 S. E. 490; Commonwealth v. Callaghan, 223 Mass. 150, 111 N. E. 773; Morales v. Heirs of Cerame, 30 P. R. 784; Gual v. Bonafoux, 15 P. R. 545; Negueruela v. Samohano, 16 P. R. 658.

In Armsterdam v. Puente, 16 P. R. Rep. 527, 532, the Supreme Court of Porto Rico said: "We think it is a fair deduction, from the provisions of the Civil Code heretofore in existence, as well as the practice and jurisprudence in this regard, that, without some authentic act which reveals the will of the father to give the child a status, the child has only a right of action to compel the father to confer such status. Section 135 of the Spanish Civil Code and section 193 of the Porto Rican Civil Code provide for the cases when a father is compelled to acknowledge his illegitimate child. He can be compelled by an action, and the necessity for such action can only be said to be dispensed with when there are some solemn acts on the part of the father, which show that this obligation has already been performed."

In Porto Rico, a natural child has a legal (statutory) right to support by the father. In most of our states the father of such child is merely required to furnish narrowly limited support, lest otherwise the community be burdened by an additional pauper; the basic right is the right of the taxpayers to be exonerated from the burden of supporting the father's illegitimate offspring.

Another important difference is as to rights of inheritance, which cannot be defeated by will. Under section 195, par. 3, supra, a natural child has the right to receive the hereditary portion determined in the Civil Code. By section 751 it is provided that a person "having heirs by force of law, may dispose of his property only in the manner and with the limitations established in article 5 of this chapter." Turning to article 5, we find that, subject to some exceptions, a testator having legal heirs can freely dispose of only one-third of his property.

As a generalization, in Porto Rico the rights of a natural child are, or may be made, fairly comparable to the rights of a child born in lawful wedlock, both as to support and as to inheritance.

[1-3] The demurrer is elaborate and argumentative; it raises some 30 objections to the complaint, practically all sustained by the court below. But it is plain, and defendant's learned counsel in effect concedes, that a large share of these objections disappear under adequate analysis of the real nature of the case stated. Undoubtedly the complaint is imperfectly drawn and contains superfluous and irrelevant allegations. A motion to strike out is the remedy for such defects in pleading. A general demurrer cannot be sustained and the plaintiff held remediless if, fairly construing the complaint, a case is stated.

Correctly analyzed, the case stated is not for filiation or for present or future support or to be declared an heir. Nor is it a suit, by a child living in the family, against the father. It is a suit to recover damages based on defendant's fraudulent avoidance of his statutory duty to support and educate by conspiring with others to cause the plaintiff's paternity to be ascribed to the negro barber.

The case is grounded on the familiar and elementary principle, stated in Comp. Stat. Porto Rico, § 469 (Civil Code, § 1803), as follows:

"A person who by any act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done."

Act and omission are both alleged. Parker v. Barnard, 135 Mass. 116, 119, 46 Am. Rep. 450.

The gravamen of the case is that plaintiff is entitled to damages because of the defendant's fraud in preventing him from asserting the truth as to his paternity, and thus having the environment and education to which his paternity entitled him, and as a part of the wrong and as a means of effecting it, conspiring with others to cause the boy's paternity to be ascribed to the negro barber. 26 C. J. p. 1173; Urtz v. Railroad, 202 N. Y. 170, 95 N. E. 711; Ochs v. Woods, 221 N. Y. 335, 441, 117 N. E. 305; Marshall v. Buchanan, 35 Cal. 264, 268, 95 Am. Dec. 95; Desmarais v. People's Gas Light Co., 79 N. H. 195, 107 A. 491; Holloway v. Forsyth, 226 Mass. 358, 363, 364, 115 N. E. 483; Van Houten v. Morse, 162 Mass. 414, 417, 38 N. E. 705, 26 L. R. A. 430, 44 Am. St. Rep. 373; Brown v. Castles,

11 Cush. (Mass.) 348; Fottler v. Moseley, 179 Mass. 295, 60 N. E. 788.

Such false ascription of negro blood is, under some circumstances, a legal wrong. Compare Stultz v. Cousins, 242 F. 794 (C. C. A.), where Judge Mack, dealing with an action of libel, said:

"The letter was a clear allegation that plaintiff was of one-quarter negro blood. Whatever be the rule as to spoken words (see 36 L. R. A. [N. S.] 947, note), the authorities establish that the publication of a writing containing such a statement in respect to a white man is libelous per se, at least in a community in which marked social differences between the races are established by law or custom. Axton Fisher Tobacco Co. v. Evening Post, 169 Ky. 64, 76, 183 S. W. 269, L. R. A. 1916E, 667 [Ann. Cas. 1918B, 560]; Spencer v. Looney, 116 Va. 767, 82 S. E. 745; Flood v. News & Courier Co., 71 S. Ct. 112, 50 S. E. 637, 4 Ann. Cas. 685, and cases cited. The refusal to instruct for the defendants on the theory that the charge was libelous per se was therefore clearly proper. While the trial judge might have taken judicial notice of the racial situation in eastern Tennessee, and based thereon might have instructed the jury that the charge was libelous per se, he gave the defendants an opportunity to persuade the jury that the statement made in that particular section of Tennessee might not be libelous per se; he left it to the jury to determine as a fact whether or not the relation of the two races in eastern Tennessee was such that the negro does not have the same esteem of his white neighbors as a white man, or that his race connection, if known, hurts and lessens his standing in the community generally as a matter of social intercourse, and deprives him of the standing which he would otherwise have as a white man. Obviously, no complaint can be made by defendants of a charge which erred, if at all, in their favor."

[4] In many aspects, the case is like that of a child of competent parents, kidnapped and brought up in social and moral degradation during the formative period, upon which the whole course of life so largely depends. Clearly, the victim of such life-wrecking wrongdoing could maintain an action for damages against any and all parties to the wrongdoing—whether father, conspiring pseudo father, nurse, or (mythical) child-stealing gypsy. A fortiori, the real father, upon whom rested the primary duty of support and education, may be held for damages

resulting from his failure of duty, effected and aggravated by the harmful means (the fraudulent ascription of negro parentage) used to escape that duty. Cf., also, Kujek v. Goldman, 150 N. Y. 176, 44 N. E. 773, 34 L. R. A. 156, 55 Am. St. Rep. 670; Rich v. Railroad, 87 N. Y. 382; Beaudette v. Gagne, 87 Me. 534, 33 A. 23; Tubular Co. v. Exeter Co. (C. C. A.) 159 F. 824, 830.

[5] Turning now to the defendant's chief contentions: It is urged that this action cannot be maintained, because the complaint shows that the plaintiff is the legally acknowledged natural son of Jose Dolores Diaz y Aponte and Jacinto Garcia y Torrendell, and that no valid revocation of such acknowledgment is shown. This contention is unsound, for various reasons:

(1) The recognition is specifically alleged to have been procured by the defendant's fraud, and fraud cuts down everything; and in this case it was a fraud, not only upon the plaintiff, but also upon Jose and the mother, in that, as is alleged, the defendant caused them to sign an acknowledgement that Jose was the plaintiff's father, deceiving them into the belief that it was a mere adoption.

(2) The proceedings then had were not conformable to section 193 of the Civil Code, supra, wherein it is provided that "when the recognition of a minor is not made at the time of recording the birth or in the testament, the approval of the judge of the District Court of the district where the child resides, with the concurrence of the fiscal, shall be necessary." Failing such official approval, as we construe the Code, such recognition as is here invoked has no validity.

(3) It does not appear that the public document of 1910 acknowledging Jose's paternity of the plaintiff had any greater legal significance or validity than the public document of 1925 repudiating the former act of recognition and denying the truth of the statements therein contained.

[6] This conclusion also disposes of the contention that plaintiff's mother has no legal capacity to institute this action, and that it must be brought by Jose under the provisions of section 222 of the Civil Code, which provides that "illegitimate children * * * shall be under the potestas of the father or mother acknowledging or adopting them." Manifestly, if the acknowledgment of paternity in this case was, for any of the reasons above noted, invalid, the mother is the natural guardian, and entitled to bring suit. This conclusion makes it unnecessary to consider whether, in any possible aspect of the case, the court should exercise its power to appoint a guardian ad litem to take charge of the litigation. Compare Guild v. Cranston, 8 Cush. (Mass.) 506; 31 C. J. p. 1118; Robinson v. Fair, 128 U. S. 53, 89, 9 S. Ct. 30, 32 L. Ed. 415; Newland v. Gentry, 57 Ky. (18 B. Mon.) 666, 670.

[7] Defendant also contends that a judgment for filiation is a condition precedent to the maintenance of his action. Plainly this is not so. As already noted, the gist of this action is to recover damages, actual and exemplary, for injuries already suffered.

Besides there is nothing to indicate that the plaintiff desires filiation. He is now nearly, if not quite, of age; when of age he cannot be recognized without his consent. Civ. Code, § 193, par. 4, supra.

What effect a judgment in this suit for damages may have on any subsequent suit for filiation need not now be considered. But the right to recover damages for injuries already suffered cannot be denied because of the possibility that a judgment for damages may involve a collateral adjudication of plaintiff's paternity, as a suit for trespass quare clausum frequently requires a determination of title to the close.

We do not overlook the doctrine of such cases as Roller v. Roller, 37 Wash. 242, 79 P. 788, 68 L. R. A. 893, 107 Am. St. Rep. 805, 3 Ann. Cas. 1; McKelvey v. McKelvey, 111 Tenn. 388, 77 S. W. 664, 64 L. R. A. 991, 102 Am. St. Rep. 787, 1 Ann. Cas. 130; Hewlett v. George, 68 Miss. 703, 9 So. 885, 13 L. R. A. 682; Bandfield v. Bandfield, 117 Mich. 80, 75 N. W. 287, 40 L. R. A. 757, 72 Am. St. Rep. 550; Abbott v. Abbott, 67 Me. 304, 24 Am. Rep. 27. These cases hold it contrary to public policy to permit a minor child, living in the family, to sue a parent in tort for damages. Defendant's learned counsel does not cite these cases nor urge their doctrine as applicable to this case, in which the plaintiff has never been a part of the defendant's family. We concur in the view, thus implied, that the public policy favoring family unity cannot be invoked to defeat a claim for damages arising out of a breach by the defendant of every obligation arising from the limited family relationship imposed by the statutes of Porto Rico on the father of a natural child. Parenthetically, the doctrine is criticized in Cooley, Torts (2d Ed.) p. 171. Certainly it is not a doctrine which should be extended to cover a case of a natural child treated as, on this record, this plaintiff was treated by his father.

We are unable to adopt the view of the court below, repeated and emphasized, that to sustain the right to actions of this kind "would open the door to the rankest fraud and blackmail of every description, and would be a cause of much injustice and oppression." The plaintiff cannot be thrown out of court without a trial on the assumption that the allegations of the complaint are false, and that the processes of the court are being used for blackmail. In intrinsic nature the suit is no more scandalous and available for improper use than are suits for alienation of affections, breach of promise, criminal conversation, or suits for many kinds of fraud.

Plaintiff's counsel contends for exemplary damages. This question has not been argued for the defendant. It is not necessary or desirable to undertake to decide it. But if, on trial, the question arises, and the court below is of the opinion that exemplary damages may be recovered, the verdict of the jury should be taken in such form as to save that question separately.

The judgment of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion; the plaintiff in error recovers costs in this court.

JOHNSON, Circuit Judge, dissents.

On Petition for Rehearing.

ANDERSON, Circuit Judge. Defendant's learned counsel have presented a lengthy petition and argument for rehearing which, on analysis, comes in the main to a reiteration of their original contentions. In the interest of accuracy, a single correction should be made in the opinion of the majority of the court.

This court has never been able to obtain an adequate equipment of Porto Rican statutes and reports. Our library is unequipped with the Revised Statutes and Codes of 1902. Hence the statutes cited in the opinion bearing upon the rights of natural children were from the Revised Codes of 1911, and contained in section 193, paragraph 4 (ante, page 526) the provision, originating in the amendment of March 9, 1911, that when the recognition of a minor is not made at the time of recording the birth, the approval of the appropriate District Judge with the concurrence of the fiscal shall be necessary; and on page 528, ante, the failure to obtain such official approval is stated as the second of three reasons why the recognition of plaintiff by the negro barber is no bar to the maintenance of the present action. The second

reason is obviously not necessary to the result reached; it should be regarded as struck out.

The statutes of controlling significance in this case were the same prior as subsequent to 1911. The gist of the action is for damages. This defendant cannot set up theoretical rights (abandoned if ever existent) of the alleged pseudo father as a bar to the wrong alleged to have been done by his fraudulent concealment of his own paternity and avoidance of its resultant obligations.

The petition for rehearing must be denied, as neither of the two judges joining in the prevailing opinion desire a rehearing. Rule 29.